WILLIAM HAYS *et al.* Appellees, *vs.* MARGARET J. FEATHER *et al.* Appellants.

*Opinion filed February 16, 1910.*

PARENT AND CHILD—*presumption is that a voluntary deed from child to parent is fraudulent.* Where a parent obtains a conveyance of real estate from his child without consideration, particularly if the child is not bright mentally, it will be presumed that the transaction was fraudulent, and the deed will be set aside by a court of equity, as against the parent or his grantees with notice, unless it is clearly shown that the transaction was fair.

APPEAL from the Circuit Court of Mercer county; the Hon. FRANK D. RAMSAY, Judge, presiding.

CHURCH & CHURCH, and ROBERT L. WATSON, for appellants.

JOHN M. WILSON, and GEORGE W. WERTS, JR., for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the appellees in the circuit court of Mercer county against the appellants to set aside a deed bearing date October 19, 1896, from Aurie L. Feather to her father, James Feather, for a forty-acre tract of land located in Mercer county which said Aurie L.

Feather had inherited from her mother, and for the partition of said premises among the appellees, William Hays and S. D. Creighton Hays, and the other heirs-at-law of Aurie L. Feather, deceased. Mary C. Feather, the stepmother of Aurie L. Feather, as executrix of the last will and testament of James Feather, deceased; George C. Weidling and Clyde A. Miller, who had purchased the premises through Mary C. Feather, as executrix of James Feather, deceased, and the Northwestern Mutual Life Insurance Company, to whom Weidling and Miller had mortgaged the land with other lands, were made parties defendant to the bill. Answers and replications were filed, and the case was referred to the master in chancery to take the proofs and report his conclusions. The proofs were taken by the master, and he reported that the deed from Aurie L. Feather to James Feather ought to be set aside and the premises partitioned among the heirs-at-law of Aurie L. Feather, deceased. Objections were overruled by the master to his report and renewed as exceptions in the circuit court and overruled, and a decree was entered in accordance with the recommendations of the master, and an appeal has been prosecuted to this court.

The record has been so imperfectly abstracted that it is impossible to dispose of the case upon the abstract alone, and we have been forced to go to the record for information which should have been found in the abstract. The exceptions to the master's report and the exhibits were not abstracted at all, and we might well have affirmed the decree of the lower court for want of a sufficient abstract. *Staude* v. *Schumacher,* 187 Ill. 187.

The facts disclosed by the record, in brief, are as follows: Aurie L. Feather was the only child of James Feather by his first wife. She had inherited from her mother the forty-acre tract of land in controversy. From her infancy she was peculiar and not bright mentally. She never married, but lived with her father and Mary C.

Feather, his second wife, until she grew to womanhood, and continued to make her home with Mary C. Feather after her father's death and until her death. After she reached her majority James Feather took her to Aledo and had her convey to him, without consideration other than love and affection, the land which she had inherited from her mother. James Feather continued to hold the title to said land until his death, in 1903. Aurie L. Feather died in 1906, and the land was conveyed by Mary C. Feather, as executrix, to Weidling and Miller in 1907. There had been some talk in the neighborhood where all of the parties resided that the deed from Aurie L. Feather to her father, James Feather, was not a good deed, which rumor was known to Miller at least, and probably to Weidling, and after the sale was made by Mary C. Feather to Weidling and Miller of the two hundred and sixty-acre farm, of which the forty acres in controversy formed a part, and when they had only made a payment on the land of ten per cent of its purchase price, they were both notified, in writing, that the deed from Aurie L. Feather was not a good deed and requested not to purchase that portion of the farm. They, however, disregarded the notice and closed the deal, some concessions being made to them in price on account of the claimed defect in the title.

The law is well settled in this State that where a parent obtains a deed for land from a child not strong mentally, and without consideration, the presumption is the transaction was fraudulent, and the deed will be set aside by a court of equity unless it is clearly shown to be a valid transaction. (*White* v. *Ross,* 160 Ill. 56; *Lewis* v. *Mc-Grath,* 191 id. 401; *Sayles* v. *Christie,* 187 id. 420.) And where a deed is procured by a parent from a child for the real estate of the child, and without consideration, the burden is upon the parent to show that the transaction is fair and was entered into by the child fully understanding its

rights and fully comprehending the transaction by which it parted with the title to its land, and that the transaction was for the benefit of the child. (*White* v. *Ross, supra; Ferns* v. *Chapman,* 211 Ill. 597; *McLaughlin* v. *McLaughlin,* 241 id. 366.) The evidence shows that James Feather, at the time he gave instructions to the scrivener who prepared the deed, stated to the scrivener that he was having his daughter convey her land to him so that in case of her death her maternal relatives would not inherit from her any of said land, and it also appears from the evidence that Weidling and Miller, at the time they purchased the land from the executrix of James Feather, deceased, had full knowledge that the deed had been made by Aurie L. Feather to her father without consideration other than love and affection and that there was likely to be trouble over the title, and that, as some of the witnesses stated, they were probably buying a lawsuit. While there is much conflict in the evidence as to the mental condition of Aurie L. Feather at the time she executed the deed and up to the time of her death, all the witnesses substantially agreed that she was peculiar and not mentally bright. The master saw the witnesses and heard them testify, and the findings of the master were approved by the chancellor. We are unable to say, from a full examination of the evidence in this case, not only as abstracted but as found in the record, that the decree is manifestly and palpably wrong.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Mr. JUSTICE COOKE, having been of counsel in the trial court, took no part in the consideration or decision of this case.