[Civ. No. 1008. First Appellate District.—June 24, 1912.]

NELLIE MARRON, as Administratrix of the Estate of THOMAS F. MARRON, Deceased, Appellant, v. MARY MARRON and PATRICK J. MARRON, Respondents.

ACTION TO SET ASIDE DEED—MENTAL INCOMPETENCY OF GRANTOR—FRAUD AND UNDUE INFLUENCE—ERROR IN GRANTING NONSUIT—BURDEN OF PROOF.—In an action by the wife of a deceased husband, as administratrix of his estate, to set aside a deed made to his mother of nearly all of his real and personal property of the value of $15,000, for a nominal consideration of $10, alleged to have been procured from him by his mother while he was mentally incompetent, by means of fraud and undue influence, to the exclusion of his wife and infant child, whom he loved, it is held that the evidence was such as to throw upon the mother the burden of proof to show that the deed was not so obtained, and that it was error to nonsuit the plaintiff.

ID.—RULES AS TO MOTION FOR NONSUIT—PRESUMPTIONS.—A motion for a nonsuit assumes as true every fact which the evidence and presumptions fairly deducible therefrom tend to prove, and which was essential to entitle the plaintiff to recover. On such motion, the evidence must be taken most strongly against the defendant, and contradictory evidence must be disregarded, and the motion denied, if there is any substantial evidence tending to prove plain-

tiff's case, without passing upon the sufficiency of such evidence. The rules as to nonsuit are the same whether the trial is by the court or by a jury.

ID.—ADVANTAGE TAKEN BY MOTHER OF DRUNKEN CONDITION OF SON—EXCLUSIVE CONTROL—DEED NOT PRODUCED—BURDEN OF PROOF.—Where it appears that the mother, in the temporary absence of the wife, acquired exclusive control of her son, to the exclusion of his wife, and that the son was habitually a drunkard, and that she took advantage of his drunken condition to secure a transfer of his property to herself, the notary who drew a blank deed and bill of sale, believing that the transfer was to be to the wife, so expressed himself, which expression she failed to correct, and also failed to produce the deed for comparison of handwriting, claiming that it was mislaid in her home, it is held that the circumstances, taken together, are sufficient to cast the burden upon her to prove that no imposition was practiced upon her deceased son, who died as the result of his habitual drunkenness.

ID.—INADEQUACY OF CONSIDERATION OF DRUNKARD'S CONTRACT—UNFAIRNESS—INTOXICATED CONDITION—FRAUD—ANNULMENT IN EQUITY.—The inadequacy of consideration of a drunkard's contract, or its manifest unfairness, is a weighty factor in securing the annulment of such contract in equity. Equity will not countenance fraudulent imposition in securing such a contract, and a gross inadequacy of consideration is evidence of imposition, justifying the interference of equity. Where the grantor is actually intoxicated, the inadequacy of price is direct evidence of fraud justifying the aid of equity to annul the grant.

ID.—GENERAL RULE AS TO WEAKNESS OF MIND CONJOINED WITH INADEQUATE CONSIDERATION—PRESUMPTIONS—BURDEN OF PROOF.—Generally, when there is weakness of mind in a person conveying land, arising either from age, sickness, intoxication, or any other cause, although not amounting to absolute disqualification, and an inadequate consideration, imposition or undue influence will be presumed, and the burden is upon the grantee to show their absence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Edward C. Harrison, Maurice E. Harrison, and Daniel Ryan, for Appellant.

Lewis F. Byington, and Randolph V. Whiting, for Respondents.

KERRIGAN, J.—This is an appeal from a judgment following the granting of a motion for nonsuit in an action brought by the plaintiff to set aside a transfer of real and personal property.

On and prior to the twenty-second day of April, 1907, Thomas F. Marron was the owner of certain pieces of real property situated in the city and county of San Francisco. He was married and had one child, aged four months. On the above-mentioned date he made a deed and an assignment, purporting to convey to Mary Marron, one of the defendants, the real and personal property described in the complaint. About three months thereafter he died, and subsequently the plaintiff, his wife, was appointed the administratrix of his estate, whereupon she brought this action to set aside the deed and bill of sale to said properties, upon the grounds that Thomas F. Marron was of unsound mind at the time the instruments of conveyance were executed; that they were procured from him by undue influence and by fraud practiced upon him by the defendant Mary Marron.

After the plaintiff had closed her case, the court granted a motion for nonsuit on the ground that plaintiff's evidence failed to show that, at the time of making the instruments, the deceased was incompetent or that the execution of those documents was the result of fraud or undue influence exercised upon him as charged in the complaint. Upon this order judgment was regularly entered. Plaintiff excepted to the ruling granting the motion, and now assigns that ruling as error. We think the ruling cannot be sustained.

A motion for nonsuit assumes as true every fact which the evidence, and presumptions fairly deducible therefrom, tend to prove, and which was essential to entitle the plaintiff to recover. (*Estate of Arnold*, 147 Cal. 583, [84 Pac. 252].) On such motion the evidence must be taken most strongly against the defendant. Contradictory evidence must be disregarded (*In re Daly*, 15 Cal. App. 329, [114 Pac. 787]), and the motion denied if there is any substantial evidence tending to prove plaintiff's case without passing on the sufficiency of such evidence. (*Zilmer* v. *Gerichten*, 111 Cal. 73, [43 Pac.

408] ; *Vermont Co.* v. *Declez,* 135 Cal. 579, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057].) The rules as to a nonsuit are the same, whether the trial is by the court or by a jury. (*Freese* v. *Hibernia S. & L. Co.,* 139 Cal. 394, [73 Pac. 172].)

In the case of *Estate of Arnold,* 147 Cal. 583, [84 Pac. 252], where the court passed upon a motion for nonsuit at the close of plaintiff's case in a will contest, Mr. Justice Shaw, after declaring that in a motion for nonsuit the same rules obtain in proceedings to contest a will as apply in civil suits, said: "Every favorable inference fairly deducible, and every favorable presumption fairly arising from the evidence produced, must be considered as facts proved in favor of contestants. When evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to contestants. All the evidence in favor of contestants must be taken as true; and, if contradictory evidence has been given, it must be disregarded. If there is any substantial evidence tending to prove in favor of the contestants all the facts necessary to make out their case, they are entitled to have the case go to the jury for a verdict on the merits."

Following the doctrine laid down in those cases, and therefore disregarding contradictions, and considering only the evidence tending to prove the allegations of plaintiff's complaint, and the fair inferences and presumptions deducible therefrom, the facts in the case are these:

On April 22, 1907, in consideration of the sum of $10, the deceased made a deed and assignment to his mother of property estimated to be of the value of about $15,000, and being nearly all of his real and personal property. He was then about thirty-three years of age. "He was fragile and a man of very nervous temperament"; was married and had a child, a girl, about four months old. At the time of his marriage in February, 1901, he was accustomed to drink occasionally intoxicating liquor, and in the spring of the following year commenced to drink such liquor to excess, and continued to do so until the time of his death. In February, 1907, at the request of his wife, he took a solemn pledge to abstain from the use of all such liquor for one year. Between this date and the date of making the deed and assignment he had been

in several medical institutions for treatment for alcoholism. His craving for liquor was so strong that he broke his pledge the day he took it. On the way home from one of the hospitals where he had been treated for his unfortunate habit he obtained and drank liquor. It was his custom for several months prior to making the transfers in question to take whisky or beer to bed with him to drink during the night. In brief, according to testimony introduced by plaintiff, he had become a habitual drunkard. On the day he made the deed and assignment he was drunk, stupid and appeared irrational. "He was not in his right mind and he didn't know what he was doing." His mother and other members of her family were probably present when he executed the instruments, but his wife, whom he held in high regard, was absent and knew nothing about the transaction until several days afterward. The notary before whom the acknowledgment was made, believing that the deceased was conveying his property to his wife, explained to him that "under the instrument his wife could sell the property if she wanted to," and he made a note of such explanation in his official record. The deceased made no answer to this explanation. The family of the deceased was very unfriendly to the plaintiff, and had accused her of many delinquencies, among others of being a drunkard and of caring nothing for her husband. She had never had any trouble with her husband, and was kind and devoted to him. He always expressed himself as fond of her and of his little girl. On the morning of April 25th, three days after the documents were executed, a sister and two brothers of the deceased forced an entrance into the plaintiff's home by smashing the back door, for the purpose of handing to plaintiff's husband, as they told her, a telegram, and collecting twenty-five cents for its transmission. On that occasion they took deceased away with them, and the plaintiff never afterward had an opportunity to confer with her husband alone, for he was always accompanied by some member of his mother's family or a caretaker, presumably employed by them. From the date of the instruments plaintiff never saw her husband sober during the remainder of his life. He died July 1, 1907, at a medical institution where he was being treated for alcoholism. He left no will. The defendant, Mary Marron, was unable, when her deposition was taken, and at the trial,

several months later, to produce the deed, claiming on both occasions that it had been mislaid in her home and that she was unable to find it.

The evidence shows that the deceased for a number of years was continually becoming intoxicated. He was drunk and appeared stupid and irrational on April 22d; and yet on that day and in that condition his mother accepted the instruments in question, transferring substantially all of his property to her, and, according to a fair inference from the testimony, without any, or if any, a totally inadequate, consideration. This left him and his wife and baby, to whom he was fondly attached, with so small a portion of his property that his act may be regarded as an unusual one and one inconsistent with his duties and obligations to his wife and child as well as to himself.

Other facts tending to show imposition and undue influence are: that Mary Marron failed to produce the documents so that the signature thereon could be compared with the deceased's usual handwriting, which might afford some inference as to his physical and mental condition at the very time the instruments were executed—and this circumstance we regard as distinctly suspicious. For months the deceased was never permitted to see and confer with his wife alone. Was this because the deceased "did not know his own mind," and that it was feared that his wife would exercise some influence over him inimical to the interest of his mother? It is also worthy of note that the notary public felt called upon to explain to the deceased that if the deed were executed the grantee thereunder could dispose of the property to whomever she pleased, and that the deceased failed to correct the notary's impression that the deed was being made to his wife.

All the circumstances taken together are certainly sufficient to cast the burden upon the defendant Mary Marron to show that no imposition was practiced on the deceased.

Woolen & Thornton, in their work on Intoxicating Liquors, say: "The inadequacy of the consideration, or its manifest unfairness, is a weighty factor in securing the annulment of a drunkard's contract."

In *Swan* v. *Talbot,* 152 Cal. 142, [17 L. R. A., N. S., 1066, 94 Pac. 238], an intoxicated person sold property of the value of about $12,000 for $200. The court held that while equity

would not assist a man to avoid a contract which he had entered into when drunk merely because he might wish, when in his sober senses, he had not entered into it, still equity will not countenance fraudulent imposition, and gross inadequacy of consideration is always received as evidence of imposition, justifying the interference of equity to set aside the contract.

In *Crane* v. *Conklin,* 1 N. J. Eq. 346, [22 Am. Dec. 519], it was declared to be the settled rule that while equity would not interfere to assist a person to annul his contract on the ground of intoxication merely, nevertheless if any unfair advantage has been taken of his situation it will render him proper aid; and it was there further held that where the grantor is intoxicated the inadequacy of the price is direct evidence of fraud.

In *Moore* v. *Moore,* 56 Cal. 89, it is said: "The fact of there being no consideration, or a grossly inadequate one, is a circumstance which may be considered in determining the condition of the plaintiff's mind at the time of her signing the deeds. She signed instruments which transferred her entire estate, and thereby reduced herself to a state of destitution. The fact of her having done so without consideration, or any apparent motive, would indicate great weakness or unsoundness of mind. One of the indicia of a weak or disordered mind is that its possessor is quite liable to act against his own plain interest in cases where the act could not be imputed to mistake. . . . Taking an unfair advantage of another's weakness of mind is undue influence, and the law will not permit the retention of an advantage thus obtained."

In *Allore* v. *Jewell,* 94 U. S. 506, [24 L. Ed. 260], Field, J., delivering the opinion of the court, says: "It is not necessary, in order to secure the aid of equity, to prove that the deceased was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that, from her sickness and infirmities, she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance. From these circumstances imposition or undue influence will be inferred."

Generally, when there is weakness of mind in a person executing a conveyance of land, arising from age, sickness, intoxication or any other cause, although not amounting to absolute

disqualification, and inadequate consideration, imposition or undue influence will be presumed. (*Richmond's Appeal,* 59 Conn. 226, [21 Am. St. Rep. 85, 22 Atl. 82]; *Fishburne* v. *Ferguson,* 84 Va. 87, [4 S. E. 575]; *Boyd* v. *Boyd,* 66 Pa. 283; *Samuel* v. *Marshall,* 3 Leigh (Va.), 567; *Fitch* v. *Reiser,* 79 Iowa, 34, [44 N. W. 214]; *Woodroof* v. *Howes,* 88 Cal. 184, [26 Pac. 111]; *Dingman* v. *Romine,* 141 Mo. 466, [42 S. W. 1087]; *Hays* v. *Feather,* 244 Ill. 172, [18 Ann. Cas. 538, 91 N. E. 97].)

The circumstances under which a conveyance was made, the condition of the grantor at the time, and the injustice to him and his heirs if it is upheld, may cast on the grantee the burden of showing the absence of undue influence or imposition. (*Bennett* v. *Bennett,* 65 Neb. 432, [91 N. W. 409, 96 N. W. 994].)

The other matters discussed in the briefs do not require detailed notice.

For the reasons above indicated we think the trial court erred in granting the motion for nonsuit. The judgment is therefore reversed.

Hall, J., and Lennon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 23, 1912.