DOROTHEA C. PRESTON vs. EDWARD W. PRESTON ET AL.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

Conclusions and inferences drawn by the trial court from the report of a State Referee and set forth in its memorandum of decision are not reviewable by this court because the memorandum is not a part of a finding of facts; in such a case the question for this court is whether the referee's report as accepted by the trial court furnishes adequate foundation for the judgment rendered.

To sustain a judgment rendered for a plaintiff upon a referee's report, it is not imperative that the report contain findings of fact which literally correspond with the allegations of the complaint, provided the referee has found facts from which it may fairly be concluded that the essentials of the cause of action exist.

Nor is it necessary for a plaintiff to establish all that he alleges, it being sufficient if he proves enough to sustain the judgment sought.

Undue influence may be broadly defined as any pressure exerted upon a person entering into an agreement or consenting to a disposal of his property which, in view of all the circumstances of the case, including his age and capacity and the nature of the transaction, is such as to preclude the exercise of free and deliberate judgment.

Ordinarily a claim of undue influence must be supported by positive evidence of its nature and extent, but where the relationship between the parties is of a fiduciary character, there is a presumption that the donor's trust and confidence has been abused which, unless rebutted, justifies the abrogation of the gift.

While such a presumption does not arise from the relationship between parent and child, it is nevertheless true that the law jealously scrutinizes any transaction during the child's minority

or shortly thereafter by which the parent obtains some pecuniary advantage; and if it appears that the parties did not deal on equal terms, that the child was not afforded independent and disinterested advice, that he did not possess full knowledge of his interests and a fair understanding of the nature and consequences of his acts, the conveyance will be set aside even though there is no evidence of fear, intimidation or actual fraud.

In the present case, the plaintiff was beneficiary of three trusts, terminating at her majority, of which her adoptive father was trustee. He had never accounted to her for the sums in his possession nor was she otherwise informed of the extent of her interests; and his practice of mingling the trust funds with his personal property furnished ground for the suspicion that an obligatory accounting would have caused him embarrassment. Sixteen days after the plaintiff became of age, upon the sole advice of her adoptive mother, a woman of strong, positive and dominating character, who had supervised her training and education and for whom she had deep respect and affection, the plaintiff executed an irrevocable trust agreement whereby she virtually placed herself in perpetual guardianship by surrendering to her mother the control of all her property and earnings of whatever description and whenever acquired upon trust to apply the income and principal, if necessary, to her support, and, in addition, divested herself of all testamentary power by provisions for the distribution of her estate after death, in which her mother and adoptive brothers were preferred over her blood relatives. There was no suggestion in the evidence that such a drastic arrangement was rendered necessary or desirable by her own improvidence or incompetence. *Held* that under all the circumstances, the agreement was inequitable and unconscionable and should be set aside.

The limited and statutory jurisdiction which courts of probate exercise over the final settlement of testamentary trusts is not exclusive, but concurrent with the powers of general courts of equity.

Trusts *inter vivos* are exclusively within the jurisdiction of courts of equity.

The spirit of our practice favors the litigation of related controversies in one action.

A ruling of the trial court refusing an accounting is an interlocutory judgment reviewable by this court and, if it be reversed upon appeal, the trial court should then proceed to order the accounting and render final judgment thereon.

The rule that a beneficiary cannot maintain an action at law for a wrong committed against his trust estate unless his trustee

Preston *v.* Preston.

has refused, upon demand, to institute the proceedings, is re-
laxed in suits of an equitable nature, especially where the trus-
tee is implicated in the alleged wrong, and the making of such
a demand would be an idle ceremony.

The objection that no such demand and refusal have preceded an
action by the beneficiary must be raised on the pleadings;
otherwise it will be deemed to have been waived.

Argued October 30th, 1924—decided February 23d, 1925.

APPEAL by the beneficiary of testamentary and other
trusts seeking an accounting by the trustee therein
named, and the cancellation of a later trust agree-
ment executed by the plaintiff, upon the alleged
ground that it had been procured by the undue influ-
ence and imposition of the defendants, brought to the
Superior Court in New Haven County and referred
to the *Hon. Marcus H. Holcomb,* a State Referee, who
heard the parties and reported the facts; the court,
*Nickerson, J.,* accepted the report and found the facts
as therein stated and thereupon adjudged that the
trust agreement set out in the fourth count of the
complaint was null and void, but that the Superior
Court had no original jurisdiction of the accounts of
testamentary trustees, and for that reason rendered
judgment for the defendants upon the first three
counts of the complaint; and from this judgment the
plaintiff and the defendant Cornelia L. H. Preston
appealed. *Error on plaintiff's appeal; no error on
defendant Cornelia L. H. Preston's appeal.*

The complaint in this action contains four counts.
The first count alleges that the defendant Edward
W. Preston is trustee under the will of Elizabeth W.
Preston, grandmother of the plaintiff; that plaintiff
has a certain interest in the trust created in this will,
and that the trustee has refused to account in respect
to this trust; the second count alleges that the defend-
ant last named is trustee under the will of Bennett S.

Preston, grandfather of the plaintiff; that plaintiff has certain interests in the trusts created by this will, and that the trustee has refused to account in respect to this trust; the third count is based upon a trust *inter vivos* created by Agnes H. Preston, a great aunt of the plaintiff by marriage, in which the defendant Edward W. Preston is named trustee and under which he has acted as such, in which trust plaintiff has an interest, and in respect to which the trustee has refused to account; the fourth count sets up the execution of a trust deed given by plaintiff to the defendant Cornelia L. H. Preston, as trustee, which deed plaintiff alleges was procured from her by undue influence and intimidation, and claims that the same be set aside and declared void.

The referee finds certain facts alleged in the complaint and admitted in the answer of the defendants, to be true. These may be summarized as follows. As respects the first count: Elizabeth W. Preston died in March, 1894, leaving a will duly proved, in which one half of her estate is given to Edward W. Preston as trustee to pay over the income to Charles L. Preston (son of testatrix and father of plaintiff), and after his death to pay two thirds of the income to the son's children until the youngest of them attains the age of twenty-one years, when this two thirds of the principal of the fund is to be divided among his son's children. The income of one third of the fund is to be paid to the widow for life, and at her death the principal thereof is to be divided among the aforesaid children. In the event of no child of the son attaining majority, or of no living descendants of any child surviving, the estate goes in remainder to Edward W. Preston. The latter accepted the trust and is now acting as trustee. He has collected all the income from the trust fund.

As respects the second count: Bennett S. Preston died in 1899 leaving a will, which was duly proved, in which he devises to his son, the defendant Edward W. Preston, a house and lot in Woodbury, to be held in trust for his son, Charles L. Preston, who is to receive the use, income and profits thereof for life, which are thereafter to be paid to his widow, if any there should be, and to the children of Charles in common, and upon the decease of the widow, the trust is to terminate and the real property vest in fee in his surviving children. A third of the remainder of testator's estate is given to Edward W. Preston in trust, to pay the income of the same to Charles L. Preston for life, and at his decease, two thirds of the income is to be paid to his children until the youngest attains the age of twenty-one, when the principal fund is to be divided equally among his children then living; the other third of the income is to be paid to the widow of Charles for her life, and at her death the principal fund is to be divided equally among the children of Charles. Edward W. Preston accepted the trust under the will and is now acting as trustee. Charles L. Preston died in 1902 leaving a widow, Lulu Preston, and four children, Carl, Elizabeth, Margaret B. and Dorothea C., the plaintiff. Margaret B. died in 1918, and the defendant Cornelia L. H. Preston was appointed administratrix of her estate. Dorothea C. Preston, the plaintiff, became twenty-one years of age. Edward W. Preston trustee has collected all of the income from the trust fund.

As respects the third count: Agnes H. Preston, in 1916, while in full life, transferred, by an instrument in writing, certain real and personal property to the defendant Edward W. Preston in trust for various purposes, among them to pay at her death $2,000 to the plaintiff. Agnes H. Preston died in 1917. The

defendant trustee at her death had in his hands sufficient trust property to carry out all of the provisions of the trust.

As respects the fourth count: On February 8th, 1919, the plaintiff became of age. On or about the last named day plaintiff was a student nurse in the Bridgeport Hospital and legally resident with the defendants. Allegations not admitted, but denied, in this count are as follows: "4. On February 24, 1919, the defendants, through undue influence and intimidation, induced the plaintiff to sign a certain so-called trust agreement dated February 24, 1919, a copy of which is hereto attached and marked Exhibit C. 5. The plaintiff did not read said alleged trust agreement nor did she understand the nature and consequences of said alleged trust agreement. 6. Said alleged trust agreement is inequitable, was obtained from the plaintiff through fear of the documents [defendants?], and the plaintiff, being unaccustomed to legal documents of any kind, did not understand what she was directed by the defendants to sign."

The trust agreement above referred to is printed in the footnote.

---

Know all men by these presents, that I, Dorothea C. Preston, of the town of Roxbury, County of Litchfield and State of Connecticut, do hereby give, grant, bargain and confirm unto Cornelia L. H. Preston, my mother by adoption of the said town of Roxbury, in trust as hereinafter specified, all of the property both real, personal and mixed which I may now possess, which I may now own by reversion or remainder and all that hereafter comes to me, either by devise, inheritance or otherwise.

The said Cornelia L. H. Preston to have and to hold the same under our agreements of trust as mentioned in this instrument, as follows:

In the event of my death prior to the death of said Cornelia L. H. Preston, then all of said property to go to and become the absolute property of said Cornelia L. H. Preston.

Upon my marriage, if such event should occur, then and there-

The various allegations in the above counts not admitted by defendants' answer are covered by findings of the referee in substance as hereafter stated.

---

upon said Cornelia L. H. Preston is to deliver to me the sum of two thousand (2,000) dollars, and said Cornelia L. H. Preston shall be discharged of said trust to such amount and to that extent.

In the event of my marriage and upon my decease I should leave lawful issue me surviving, then the balance of said trust funds are to go to and become the property of my said lawful issue.

In the event of my marriage and there should be no lawful issue me surviving, then and in that event the balance of such trust funds shall go to my legal heirs-at-law as prescribed by the statutes of the State of Connecticut at the time of my decease.

And I do hereby give to said trustee the right and power to take, acquire and hold all of such property as the same may be due to me at the present time or at any time hereafter and the same to manage, invest and re-invest as in her judgment she may determine notwithstanding the laws of Connecticut in relation to the investment of trust funds.

And I do hereby authorize, empower and direct said trustee to use the income of all my said property for my use and benefit, and if in the judgment of said trustee such income should not be sufficient for my needs or the needs of any children which I may hereafter have, then and in that event I authorize said trustee to use of the principal sum of said trust property such part or parts thereof as she in her sole judgment may determine for my support and welfare and the support and welfare of any child or children I may hereafter have.

And I hereby directly include in the property hereinbefore mentioned, all sums that may hereafter come to me upon the death of the wife of Charles L. Preston, deceased, if she be not already deceased, she having been unheard of many years.

And the said Cornelia L. H. Preston hereby agrees to accept and carry out said trust as hereinbefore written and according to the terms therein specified and will faithfully perform all of the duties required to be performed by her in the full execution of this instrument.

And I, the said Dorothea C. Preston, do hereby make this trust conveyance irrevocable in my name or otherwise.

Should the said Cornelia L. H. Preston predecease me or resign her appointment as trustee, then I appoint my brother by adoption, Bennett E. Preston, of said Roxbury, and of Bridgeport, Conn., as such trustee.

Preston *v.* Preston.

Lulu Preston, mother of the plaintiff, has been absent from her last known home in this State and has been unheard of for seventeen years last past.

The securities in the trust fund created in the will of Elizabeth W. Preston were, in the appraisal of the estate returned to the Court of Probate, valued at $28,549.88. The securities in the trust fund created in the will of Bennett S. Preston were, in the appraisal thereof returned to the Court of Probate, valued at $17,429.31. The plaintiff had a brother Carl and two sisters, Elizabeth and Margaret, each of whom had an interest equal to that of the plaintiff, in the trusts created by Elizabeth W. Preston, and Bennett S. Preston, and Agnes H. Preston, described in the complaint.

The defendant Edward W. Preston was an uncle of the plaintiff, and he and his wife legally adopted the plaintiff and her two sisters, Elizabeth and Margaret, on October 14th, 1904. When the plaintiff was about nine years old, her adopted parents sent her away to school, and kept her in various boarding-schools until she had completed the third year of High School study, and in September, 1918, the defendants had her enrolled as a student nurse in the St. Vincent Hospital in Bridgeport, from which she graduated and is now practicing in the city of New York as a nurse. The plaintiff passed all her vacations when at schools and her spare time when at the hospital, with her

In witness whereof we have hereunto set our hands and seals this 24th day of February, 1919.

(Signed)    Dorothea C. Preston [L. S.]

(Signed)    Cornelia L. H. Preston [L. S.]

Signed, sealed and delivered
in presence of
M. L. Ginaud.
William Schmidt.

[Duly acknowledged]

adopted parents at their home in the town of Roxbury or at the Hotel Stratfield in the city of Bridgeport.

Very shortly after the plaintiff became twenty-one years of age, her adopted mother told her it would be advisable that she make a trust agreement regarding her property, to which plaintiff made no objection. The defendants procured a trust agreement to be prepared, which was shown to the plaintiff, who asked who would be the trustee if her mother died, and suggested that her adopted brother be trustee in that event. The defendants had the trust agreement rewritten making the change as to trustee, and Cornelia L. H. Preston telephoned to the plaintiff to come and execute it. The plaintiff responded, met the defendants at the Hotel Stratfield, and accompanied them to the office of Mr. Huntington, a notary public, who read the trust agreement in the presence and hearing of the parties, and indicated the place for their signatures, and the plaintiff and Cornelia L. H. Preston signed their names thereto and a copy thereof was given to the plaintiff.

The plaintiff introduced in evidence a letter from plaintiff's adopted mother, written on the letterhead of the Hotel Stratfield, dated and mailed December 29th, 1923, reading as follows: "Dear Dorothea: I hear you are trying to break a trust which was made for your benefit. I do not think you understand what it involves. I am already paying you more than the income from the trust and shall pay my expenses of this trial from the principal of the trust in defending it. I want you to come and see me at this address, Room 326—on New Year's day, January first. There will be no lawyer present. I am asking this of you as your mother because I have your interest at heart and because it is for your best good."

Edward W. Preston has made no report to the Court

of Probate as trustee of the trusts in the estates of Elizabeth W. Preston and Bennett S. Preston, for more than four years last past.

Plaintiff's counsel claimed the right to require in the present action, an accounting as prayed for in paragraph three of the prayers for relief, to which defendants' counsel objected, claiming that such accounting must first be sought in the Court of Probate where the estates are in settlement. The referee sustained the claim and no accounting was had. Plaintiff's counsel excepted to the ruling. Counsel for defendants further claimed that so long as the trust agreement mentioned in the fourth count of the complaint remains in force, the plaintiff cannot in her own name, maintain an action for accounting, but that such action must be brought by her trustee. The referee, sustained this claim, and counsel for plaintiff duly excepted.

The referee stated that his report was made to have the court determine: (1) What order shall be passed regarding the presumption of death of said Lulu Preston. (2) Whether the accounting prayed for must first be in the Court of Probate where the estates of Elizabeth W. Preston and Bennett S. Preston were probated. (3) Whether any action for accounting can be maintained by the plaintiff while the trust agreement, Exhibit C, wherein said Cornelia L. H. Preston is made the trustee of the plaintiff, remains in force. (4) Whether said trust agreement shall be declared null and void.

The referee recommended that the trust agreement be adjudged to be null and void.

The court accepted the report of the referee and rendered judgment for the plaintiff upon the fourth count, setting aside the trust deed, and for the defend-

ants upon the first, second and third counts. Plaintiff and defendant Cornelia L. H. Preston appealed.

Errors assigned in the reasons of appeal of the plaintiff are that the court erred in holding that an accounting for the trusts described in the first three counts of the complaint should be had in the Court of Probate and not in the Superior Court, and that the latter court had no jurisdiction as respects said accounts; also, that plaintiff cannot now have an accounting upon the trust set up in the third count against either of the defendants.

The reasons of appeal of the defendant Cornelia L. H. Preston assign as error the setting aside of the trust deed by the trial court and more particularly because the report of the referee does not show the existence of undue influence and intimidation on the part of the defendants upon the plaintiff inducing the signature of the deed; also that the referee has not found that the plaintiff did not read the trust agreement or understand its nature and consequences; also that the referee has not found the trust agreement to be inequitable, nor obtained from plaintiff through fear of the defendants, nor that the plaintiff was unaccustomed to legal documents of any kind and did not understand what she was directed to sign, all of which facts are alleged in the complaint. The sixth assignment of error is that the trial court erred in supplying, by its own conclusions from subordinate facts, certain ultimate facts, which latter are specified in this reason of appeal. Further facts appear in the opinion.

*George E. Beers* and *Dennis T. O'Brien, Jr.,* with whom was *I. Henry Mag,* for the appellant (plaintiff).

*Carl Foster,* for the appellant (defendant Cornelia L. H. Preston).

KEELER, J. We will first consider defendant's appeal from the action of the Superior Court in setting aside the trust deed. The reason of appeal last summarized in the statement of facts, to the effect that the trial court erred in supplying, by its own conclusions from subordinate facts found in the report of the referee, certain ultimate facts, cannot be entertained by us. These conclusions are discovered by defendant's counsel in the memorandum of decision filed by the trial judge. This memorandum is not a finding of facts. There is no finding of facts in the record, of which it has been made a part. Many of the conclusions contained in the memorandum are conclusions of law from facts found by the referee, as to which it is not only the right but the duty of the trial judge to make. Certain inferences of fact based on the report of the referee are stated in the memorandum, and are largely well taken, but whether so or not, is not a matter reviewable in this court, which has to determine whether, upon the facts reported by the referee and found true by the court, there is sufficient foundation for the judgment nullifying the trust deed. Defendant's other reasons of appeal are directed to the latter point.

The first and second reasons of defendant's appeal are general in their nature and need no consideration. Regarding the third, fourth and fifth reasons of appeal, error is assigned because the referee did not specifically and *in verbis* make findings of fact according to the allegations of the complaint. As regards the third reason, it appears that the allegation of the complaint, paragraph four of the fourth count as above quoted in the statement of facts, sets up "undue influence and intimidation," and the referee has not found in any paragraph of his report that such facts existed. In fact, the referee found that there was no intimidation,

but made no finding in terms as to undue influence. He was not required so to do. It is sufficient upon this point that he finds facts from which the court may conclude that such influence did exist or to the contrary. Regarding the fifth paragraph of the fourth count, the error is assigned in the same way as a want of a finding by the referee in the exact terms of the complaint. The allegation is that plaintiff did not read the trust instrument, nor understand its nature and consequences. The referee found that the trust deed was read in her presence, and little attention need be paid that feature of the case, but whether she understood the nature and consequences of the document is to be gathered from the finding of the referee as a whole. The fifth reason of appeal practically quotes the sixth paragraph of the fourth count, and alleges as error that there is no finding by the referee covering specifically and in terms the allegations of this paragraph. One of the allegations is that the trust agreement is inequitable; it is not required that the referee find this ultimate fact in so many words, it is sufficient if inequity appears from the whole finding taken in connection with the document itself, and the same thing may be said of the allegations of the paragraph that the plaintiff was unaccustomed to legal documents, and did not understand what she was directed to sign. The allegation in this paragraph, that plaintiff's signature was obtained through fear, is negatived by the finding.

The complaint claims the setting aside and annulment of the trust instrument, and the question for the Superior Court and for us is whether, upon the finding of the referee, sufficient facts appear to justify in law granting the relief claimed.

The complaint alleged undue influence, and that allegation was sufficient to let in any evidence legiti-

mately bearing upon that claim and the finding of facts in accordance therewith. That the plaintiff in the complaint particularized regarding certain claimed facts tending to show undue influence, and that some of these latter facts are not specifically found true, does not prevent a judgment in her favor, providing other facts found in the report are ample to sustain an ultimate finding of undue influence. It is not necessary for a plaintiff to prove all that he alleges; it suffices if he proves enough to sustain the judgment sought. Upon this basis we will consider the defendant's reasons of appeal.

The referee has expressly found that in this transaction there existed no fear on the part of the plaintiff, and that she was not intimidated. The plaintiff claims that the relations between the plaintiff and her mother, taken in connection with the circumstances surrounding the transaction at the time that the trust was created, the nature and extent of the provisions of the trust instrument, taken in connection with the knowledge of plaintiff concerning the same and of the interest which she had in the property conveyed in trust, as displayed in the findings of the report of the referee, warrant the conclusion that the plaintiff was unduly influenced in this transaction, as the trial court has found. Plaintiff claims that she was so thoroughly under the continued domination of her parents, so ignorant of the consequences flowing from the trust instrument, and of the nature and amount of her pecuniary interests affected thereby, that she was induced to establish an inequitable and improvident trust by a parental influence so exercised as to be unduly controlling to the extent that she was not a free and voluntary agent.

The equitable doctrine of undue influence has been thus defined: " 'Any influence brought to bear upon a

person entering into an agreement, or consenting to a disposal of property, which, having regard to the age and capacity of the party, the nature of the transaction, and all the circumstances of the case, appears to have been such as to preclude the exercise of free and deliberate judgment, is considered by courts of equity to be undue influence, and is a ground for setting aside the act procured by its employment.' " 3 Williston on Contracts, § 1602, wherein the author quotes Pollock on Contracts (8th Eng. Ed.) 640, and takes the statement as a foundation for his discussion of the topic involved.

"The principle applies to every case where influence is acquired and abused, where confidence is reposed and betrayed." Smith v. Kay, 7 H. L. Cas. 750, 779.

Cases falling under this principle are explained and classified in Allcard v. Skinner, L. R. 36 Ch. Div. 145, 171, where Cotton, L. J., says: "These decisions may be divided into two classes—First, where the court has been satisfied that the gift was the result of influence expressly used by the donee for the purpose; second, where the relations between the donor and donee have at or shortly before the execution of the gift been such as to raise a presumption that the donee had influence over the donor. In such a case the court sets aside the voluntary gift, unless it is proved that in fact the gift was the spontaneous act of the donor acting under circumstances which enabled him to exercise an independent will and which justifies the court in holding that the gift was the result of a free exercise of the donor's will. The first class of cases may be considered as depending on the principle that no one shall be allowed to retain any benefit arising from his own fraud or wrongful act. In the second class of cases the court interferes, not on the ground that any wrongful act has in fact been committed by the donee,

but on the ground of public policy, and to prevent the relations which existed between the parties and the influence arising therefrom being abused."

The several grounds, on the combined effect of which the plaintiff seeks to set aside this trust, are that she was not advised and did not know of the nature and extent of her property interests; that she had no independent advice in the matter, and did not deal with her parents upon an equality and at arm's length; that from habitual and implicit trust in her mother she was led to the act without consideration, and only realized she had been imposed upon after her brother and sisters forced a settlement with Edward W. Preston; and that the provisions of the trust were highly inequitable and prejudicial to her. If from a consideration of these claims in accordance with the referee's report, they can find reasonable support, the action of the trial court can be fully sustained.

We may perhaps at this point dispose of the contention of the defendant, that the referee has not in terms found the provisions of the trust inequitable. It would appear that the recommendation of the referee that the trust deed be set aside, is equivalent to a finding of inequity, for he could hardly have so recommended unless he had drawn such a conclusion. However, the conclusion was one finally to be drawn by the trial court, if sustainable from the character of the trust instrument, taken in connection with the circumstances surrounding its execution.

We are asked by the plaintiff to hold that the relationship of parent and child existing between her and her adopted mother establishes a confidential fiduciary relation, which raises a presumption of undue influence arising therefrom as respects a conveyance from child to parent, and throws upon the parent the burden of proving good faith and freedom from undue

influence. This is the law in many jurisdictions, but not the rule obtaining in this State, where we have held the relationship is not fiduciary, and does not cast such a burden of proof. *Dale's Appeal,* 57 Conn. 127, 144, 17 Atl. 757; *Mooney* v. *Mooney,* 80 Conn. 446, 452, 68 Atl. 985; *Lockwood* v. *Lockwood,* 80 Conn. 513, 523, 69 Atl. 8; *Hills* v. *Hart,* 88 Conn. 394, 396, 91 Atl. 254; *Sullivan* v. *Clear,* 101 Conn. 603, 612, 127 Atl. 14. The burden of proof therefore rests in the instant case upon the plaintiff to establish the fact of undue influence upon her by her parents. Whatever may be the rule adopted as to the technical burden of proof, however, the authorities are entirely in accord that transactions between parent and child, whereby the former obtains some pecuniary advantage, especially if occurring a short time after the child comes of age (since the long exercised parental control naturally persists for some time after the child attains majority), are viewed with jealous scrutiny by courts of equity. Actual and apparent undue influence arising out of deception or intimidation may of course be proved, but aside from these features, the fundamental rule is expressed in the judgment of Bowen, L. J., in *Allcard* v. *Skinner, supra,* p. 190, that "this is not a limitation placed on the action of the donor; it is a fetter placed upon the conscience of the recipient of the gift, and one which arises out of public policy and fair play."

This principle is put in the form of a rule in *Savery* v. *King,* 5 H. L. Cas. 627, 655, where the chancellor (Lord Cranworth) says that "where a son, recently after attaining his majority, makes over property to his father without consideration, or for an inadequate consideration, a court of equity expects that the father shall be able to justify what has been done; to show, at all events, that the son was really a free agent, that

he had adequate independent advice, that he was not taking an imprudent step under parental influence, and that he perfectly understood the nature and extent of the sacrifice he was making, and that he was desirous of making it."

The principle considered above finds strong support in the following cases, among many others: *Powell* v. *Powell*, L. R. 1 Ch. Div. (1900) 243; *Baker* v. *Bradley*, 7 De G., M. & G. 597; *Ashton* v. *Thompson*, 32 Minn. 25, 18 N. W. 918; *Wiley* v. *Wiley*, 178 Ky. 501, 199 S. W. 47; *Sayles* v. *Christie*, 187 Ill. 420, 58 N. E. 480; *Noble's Admr.* v. *Moses Brothers*, 81 Ala. 530, 1 So. 217; *Taylor* v. *Taylor*, 49 U. S. (8 How.) 183; *Highberger* v. *Stiffler*, 21 Md. 338; *Berkmeyer* v. *Kellerman*, 32 Ohio St. 239. Collections of cases upon this topic in general are contained in the notes to *Davis* v. *Strange's Exr.*, 8 L. R. A. 261 (86 Va. 793, 11 S. E. 406), and *Hays* v. *Feather*, 18 Amer. & Eng. Anno. Cases, 538 (244 Ill. 172, 91 N. E. 97). Many cases go to the full extent of the English doctrine holding deeds from child to parent as prima facie void and casting the burden of proof of good faith on the grantee, and there appear few cases, if any, which do not sustain the conclusion of the United States Supreme Court in *Towson* v. *Moore*, 173 U. S. 17, 20, 19 Sup. Ct. 332, where it is held that, although such deeds are not presumptively void, yet "it is undoubtedly the duty of courts carefully to watch and examine the circumstances attending transactions of this kind, when brought under review before them, to discover if any undue influence has been exercised in obtaining the conveyance."

From the examination of the foregoing authorities, we find that in the case of a deed from child to parent, where fear, intimidation and actual fraud do not appear. courts of equity will, in considering the docu-

ment in connection with the circumstances surrounding its execution, pay special heed to the provisions of the instrument itself, the reasons for its execution as bearing upon the interests of the child, and, on the other hand, the advantages secured by the parent, and will require that the situation, at the time of the execution of the instrument, be such that the parties dealt at arm's length, and, as a corollary to this, that the child had independent advice, and, especially, that he knew the character of the property he was conveying and the extent of his interests therein, and that he fairly understood the effect and consequences of the instrument executed.

Taking up the trust instrument itself, we find the property transferred thereby includes the plaintiff's estate of every sort then possessed, or which she might then own by reversion or remainder, and all that might thereafter come to her by devise, inheritance or otherwise. This would include all of the present property and all that might be acquired in any way in the future. By its terms strictly construed, it puts in trust even the ordinary earnings of the plaintiff as a nurse or otherwise. Expressly comprehended in the property conveyed are all sums coming to the plaintiff after the death of the wife of Charles L. Preston. Express power is given to the trustee to reduce to her possession all property afterward enuring to the plaintiff. The trustee is to use—not pay over—the income of the trust estate for plaintiff's use and benefit, and in the judgment of the trustee to appropriate any part of the principal by the latter deemed necessary, in her sole judgment, for the support and welfare of the plaintiff or of any children she might have. The powers and the duties above specified enuring to the trustee differ in no essential from those ordinarily exercised by a guardian. The plaintiff, as regards her

property, is put in perpetual guardianship, since the trust conveyance is by its terms declared irrevocable. In the after disposition of the trust estate, if the plaintiff predeceases the trustee, all of the property goes to the latter absolutely. If the plaintiff marries, she is then to receive from the trustee $2,000. If the plaintiff leaves lawful issue, the *corpus* of the trust estate goes to such issue; if there is no issue, then the remainder passes to the "legal heirs at law" as provided by the statute of distributions. If the trustee predeceases the plaintiff, then the latter's adopted brother succeeds. We see, then, that the instrument under consideration is highly testamentary in its character, but lacks one characteristic of a will—it is irrevocable. By it the plaintiff parts, once for all, with all testamentary power, exercisable in the future. No power of hers can annul this disposition of her property. Marriage and the birth of children cannot affect it. By virtue of its provisions the trustee can reduce to possession and hold all after-acquired property of the plaintiff. The plaintiff might marry a man who was wealthy, or who afterward became so, and any share of the latter's estate passing by will or intestate succession to her would go into the trust, to be disposed of by what is, in effect, an existing irrevocable will. However great need of discrimination and special provision might exist in the plaintiff's family, she is powerless to make any disposition of her estate by will to carry out measures which might be highly desirable or even necessary. She has made her will, irrevocable and unchangeable, less than three weeks after attaining her majority, and becoming legally capable of establishing the trust.

It is claimed by the defendants, however, that in case of the plaintiff's death intestate and unmarried, the provisions of the trust deed call for substantially

the same disposition as that now obtaining in cases of intestacy. But it appears that in case the adoptive mother died before the child, then the latter's intestate distributees would be brothers and sisters by adoption and not by blood, so that, presumptively, in the case under discussion, her brother by blood, who was not adopted, would be excluded, while any adoptive brothers and sisters would be added to the group of legal distributees. There certainly was one adopted brother, the succeeding trustee. There is nothing in the finding of the referee to suggest the necessity or advisability of the plaintiff's tying up her property in the way she did and with such unexplained haste after becoming of age. This haste can only be attributed to some desire on the part of the defendants for a quick disposition of plaintiff's property agreeable to them. Fairness would have called for a suggestion from the defendants that plaintiff advise with some disinterested friend, or with a lawyer; also they should have made her aware of the nature and amount of the property which she then owned and of that which might accrue to her in the future. It does not appear in the report that anything of this sort was done. The haste with which the project of creating the trust was carried through is a suspicious circumstance, especially when there does not appear the slightest reason therefor. It will be recalled that, in the older cases, dealings of a parent with his child within one year from the date of emancipation are held in especial distrust, and the fact regarded as almost conclusive in establishing undue influence. The underlying idea in this respect is, of course, that at least this time is required for a person to become accustomed to full liberty in business affairs, and to be rid in some degree from the strong influence of a parent which has been exercised during minority—a period of dependence, pupilage

and restraint. In the course of a year, or even less time, the plaintiff might have found out something with reference to her property. If left free to act for that long, such would have been quite likely the case. In a case of this sort it is clearly required that the child should have an understanding of the situation, adequate to put her in a situation to deal intelligently with the affair.

The trust instrument itself, as above commented on, was certainly uncalled for so far as anything appears in the record, and highly inequitable in tying up irrevocably all the present and future property of the plaintiff. The contention of defendant's counsel that it was for the benefit of plaintiff, and indeed quite to be expected as an ordinary transaction regarding the property of a person just attaining her majority, cannot receive serious consideration. If she needed a conservator, the fact should have been shown and an appointment made; otherwise the natural, normal and usual course of proceeding would have been to pay her the income, not large, of the three trusts of which Edward W. Preston was trustee, and afford her any needed advice as to its expenditure.

Passing to the circumstances attending the transaction as reflected in the situation and conduct of defendants, we find that the time for an accounting and payment of money due respecting the three trusts of which Edward W. Preston was trustee, had arrived. He had kept the securities belonging to his trust estates in his personal safe-deposit box, and had deposited the trust income in his own name in his own personal account. The day of reckoning had arrived. If it was not convenient for the trustee to make that reckoning and the payments consequent thereon, some relief and respite could be obtained by obviating the necessity of making payment of the share of the plain-

tiff, by the institution of this trust by which payments would be made to his wife, establishing a relation so that no accounting could be had at any time by suit, except one brought in the name of the mother as trustee, unless the latter refused. It is true that a legal way for relief to the plaintiff lay open, but one so involved and troublesome that the plaintiff might well hesitate and be discouraged in taking action. The frame of mind of this trustee, and perhaps the actual amount of the trust funds available for distribution, as distinguished from the amount for which he legally might have been held, is illustrated by the fact that it was necessary sometime before November 1st, 1921, for the brother and a sister of the plaintiff to sue him in order to force a payment of the amount due them respectively under the three outstanding trusts. Further light is reflected back upon the situation when the trust in question was established, by the fact that when the settlement with the brother and sister of plaintiff was made, Edward W. Preston represented the combined capital value of the three estates as being less by about $18,000 than the same appeared to be at the time the inventories were filed in the Court of Probate. The facts found by the referee, without going into detail as to payments made by Edward W. Preston, and amounts turned over to his wife as trustee under the trust deed involved in this action, while not specific as to yield exact amounts upon analysis, can suggest no other conclusion than that the original trust estates had been depleted by a remarkable shrinkage in value or by mismanagement. In such a situation the trust instrument executed by plaintiff might not only have been highly advantageous to the defendants respecting future benefits likely to arise under its terms, but also a present help at the time of its execution. Such was the situation

when the plaintiff made the trust deed. She was dealing with her mother, who, as found by the referee, was a woman of strong and positive character, who had held a firm hand over her since early childhood, and for whom she had a sincere affection, and to whose suggestion she was inclined readily to yield, and it was this mental condition which caused her readily to yield to her mother's suggestion, and to sign the trust instrument voluntarily and not from fear or intimidation. The letter from the mother to the plaintiff, made part of the referee's finding and appearing in the statement of facts, is highly significant as bearing upon her ability in the line of dominating shrewdness. As appears from the finding of the referee, the plaintiff then had no knowledge of the nature and extent of her property interests, and only learned as to these, when the facts came to her attention through learning of the settlement made with her brother and sister, when she took counsel and afterward brought suit.

In this position of affairs her mother suggested to the plaintiff that she make a trust disposition of her property, and from all that appears of record the plaintiff, regarding it as something quite ordinary and not requiring discussion, assented. The defendants then procured a trust deed, and showed it to the plaintiff, who perceived that no successor as trustee was named in case of her mother's death, called attention to the fact, and defendants had the deed redrawn, and then sent for the plaintiff to come and execute it, which she did. There appears to have been no deception in the statement of facts, only an entire disregard of very material considerations in the conversations leading up to the execution of the instrument. It is a compelling inference from the whole trend of facts as stated in the report of the referee and in the foregoing statement of facts, that the effect of the execu-

tion of the instrument was belittled and treated as a matter of course, through the influence of a shrewd and dominating mother upon an unsuspecting child, and so the latter was induced to sign a document highly detrimental to her control and disposition of her property in after life, and which placed her in a position of perpetual guardianship, just because, apparently, she could see no reason why she should not sign the proffered document.

Upon such a state of facts the referee recommended judgment setting aside the trust instrument, and the Superior Court took action to that effect. The trust agreement was clearly induced by undue influence, exerted not through fear, intimidation, actual fraud or falsehood, but by influence skillfully exerted upon a child just attaining her majority, who had no disinterested advice, to which she was clearly entitled, who was ignorant of the nature and extent of her property rights, and who had implicit confidence in and great affection for her mother, a dominating and astute person. The parties in no way dealt at arm's length, or upon a footing of equality. The agreement itself was, under the circumstances, unconscionable and inequitable. Entire confidence in the mother existed in the child; it was abused and betrayed. There is no error upon defendant's appeal.

The plaintiff claimed as relief an accounting from Edward W. Preston as to the three trusts of which he was trustee, two of a testamentary nature and one *inter vivos,* upon the facts set forth in the first three counts of her complaint. The referee held that the accounting in the testamentary trusts was within the exclusive jurisdiction of the Court of Probate, and also that he could not take the account because the trust agreement involved in the fourth count still stood unannulled and in force, and that relief against

Edward W. Preston by way of accounting could be obtained only by an action brought by Cornelia L. H. Preston as trustee for the plaintiff, at least, until it appeared that she had been requested by plaintiff to bring such an action and had refused. In this last holding the referee was correct, as the case stood before him. As regards the exclusive jurisdiction of the Court of Probate, both the referee and the trial judge took the wrong view. In the matter of final settlement of testamentary trusts, the jurisdiction of the Court of Probate is not exclusive, but is concurrent with that of the ordinary courts of equity, which have always exercised such jurisdiction, which has not been taken away by the statute enlarging the jurisdiction of the Court of Probate, which in this regard is limited and exclusively statutory. *Parsons* v. *Lyman,* 32 Conn. 566, 573; *Dailey* v. *New Haven,* 60 Conn. 314, 325, 22 Atl. 945; *DeLadson* v. *Crawford,* 93 Conn. 402, 405, 106 Atl. 326. It is conceded by the defendants that in a proper action the only court having jurisdiction of the trust *inter vivos,* is one of general equitable jurisdiction. As regards the question of the plaintiff bringing suit for an accounting against Edward W. Preston without having requested her trustee so to do, resulting in a refusal by the latter, as we have said, the referee properly refused to take the account since, so far as his powers existed, the trust agreement involved in the fourth count remained in full force. But the further claim is made by the plaintiff that it was the duty of the trial court, after it had in its judgment nullified this trust agreement, to have also ordered the taking of this account before final judgment, and the result embodied therein. If the ruling of the trial court be taken as sound, we have the case of an agreement nullified and set aside, the defendant Cornelia L. H. Preston no longer a trustee, the plaintiff free to

sue the defendant Edward W. Preston in another action demanding exactly the same relief demanded under the first three counts in the present action, and yet debarred from obtaining the relief sought therein. Facts are found by the referee in the present action abundantly justifying an accounting, and entitling plaintiff thereto; why should she be compelled to bring a new action and be at the expense of proving matters already proved? All of the parties necessary in a new action are before the court, and, as appears from the referee's report, the questions ordinarily arising in an action for an accounting were fully litigated. To compel the plaintiff to bring a new action would appear to be idle and uncalled for, and quite out of accord with the spirit of our practice, which favors as far as possible the litigation of related controversies in one action. If the defendant Cornelia L. H. Preston had been asked by the plaintiff to bring suit against her husband and had refused, and then plaintiff had brought action, she would have been properly a defendant with her husband. By General Statutes, § 5821, the interlocutory judgment ordering an account is expressly made appealable as if a final judgment; why should the judgment in this action refusing an accounting not be given the same interlocutory force and, when the court has put an end to the existence of a trust agreement so as to render the resort to the trustee thereunder unnecessary, proceed to order the relief demanded of an accounting to complete the remedy of the plaintiff? In *Brady* v. *Brady,* 82 Conn. 424, 74 Atl. 684, the judgment ordering an accounting is termed interlocutory; likewise in *Neuschtat* v. *Rosenthal,* 87 Conn. 400, 403, 87 Atl. 741. It must be equally so where refusing an accounting, and where the appellate court shall find that the refusal was erroneous in point of law, the trial court is put

in a position to render judgment ordering an accounting, so far as matters of procedure are concerned, and to render final judgment when the accounting has been reported to the court.

It is the office of an interlocutory judgment to order what further steps shall be taken and facts decided in preparation for the final judgment.

It has generally been held that a beneficiary cannot sue the parties at law for any harm done his trust estate without first asking his trustee to bring a proper action and receiving a refusal. The reasons of convenience, in the proper administration of trust estates, which underlie this rule, are apparent. This rule is rather strictly enforced as regards actions at law, but not so rigidly regarded in equitable actions. This is especially true where trustees are implicated in the alleged wrong. *Weetjen* v. *Vibbard,* 5 Hun (N. Y.) 265; *Cooper* v. *Weston,* 1 N. Y. Supp. 601. This is such a case. It would have been an idle ceremony to have asked Cornelia L. H. Preston to bring suit and she has been in no way prejudiced by the action as brought. The parties are the same as if the action had been brought by her, or by the plaintiff in her name, after consent to such a course.

This question, however, cannot properly arise on the pleadings. In *Merwin* v. *Richardson,* 52 Conn. 223, 233, a case where a beneficiary had brought suit, we held that the claim that no application had been made to the trustee to sue must appear in the pleadings, saying: "There was no plea to the jurisdiction or in abatement. Neither was there a demurrer. There is an answer, but it does not question the ability of the plaintiffs to sue, so that the pleadings raise no such question as this. As we understand the spirit and policy of the Practice Act, it requires that all such questions shall be raised by the pleadings. *Trow-*

*bridge* v. *True,* ante, p. 190.   We think that the defendants by their answer, and by going to trial on the merits, waived any question as to the capacity or right of the plaintiffs to sue."

In the instant case if, as a matter of pleading, such a fact was defensive, it should have been set up in the answer.   If, as is held in some jurisdictions, a demand upon the trustee for action in the matter and his refusal is a necessary allegation in the complaint, then its absence should be met by a demurrer.   There is no demurrer, and no allegation of the answer is directed to this point.   The parties went to trial upon the issue of an accounting, and from the referee's report it is apparent that it was fully litigated, and it was a ground of decision in the judgment of the trial court. It is apparent from the report of the referee, accepted and found true by the court, that there is abundant ground for requiring Edward W. Preston to account, as respects the two trusts involved in the first and second counts.   He had mingled the trust funds in his charge with his own funds and had kept no separate accounts thereof; he continued to hold the trust funds after the expiration of the trusts; he had made no reports as trustee to the Court of Probate, as required by law, for more than four years preceding the trial of the present action and since 1919, when he became liable finally to account; and the various sums found to have been received by him in the report of the referee taken together with the sums claimed by him to have been disbursed, show such a lack of accord and reconciliation, that an accounting is clearly required.

Passing now to the claim for an accounting by Cornelia L. H. Preston for the trust fund described in the third count of the complaint, arising out of the *inter vivos* trust established by Agnes H. Preston, the

plaintiff claims an accounting therefor from Cornelia L. H. Preston, since the referee's report, found true by the trial court, states that Edward H. Preston testified that he had paid over the amount of $1,738.27, being the amount of the trust fund less inheritance tax, to her as trustee, and since, in the joint answer of the defendants to the third count of the complaint, it is averred that Edward W. Preston had "distributed said sum of $2,000 either to the plaintiff or unto the said Cornelia L. H. Preston, trustee, under the terms of Exhibit C of the complaint." This is sufficient to establish technically the fact of the money coming into the hands of Cornelia L. H. Preston, but other money is also disclosed by the report to have come into her hands, and all was mingled together, and never was in her actual possession, except in her husband's safe-deposit box or his personal account, and all checks for income were made by him. An accounting by Edward W. Preston will undoubtedly disclose the total indebtedness of the defendants to plaintiff and the amount paid the latter by him, and ought to end the case with these facts in view. Taken in connection with the fact that no demand for an accounting on the part of Cornelia L. H. Preston is made in the complaint, we cannot say that the trial court erred in not granting this relief, claimed by the plaintiff as general relief flowing from the facts found by the court.

There is no error upon defendant Cornelia L. H. Preston's appeal. There is error upon plaintiff's appeal, and the case is remanded to the Superior Court for entry of judgment in accordance with this opinion.

In this opinion the other judges concurred, except KELLOGG, J., who concurred in the result, but died before the opinion was written.