GEORGE SEMPER ET AL, Appellants, v. KATE ENGLEHART.

**Undue influence: AGE AND INFIRMITY.** Extreme age and consequent infirmity may be considered in determining whether a grantor was unduly influenced in making a conveyance.

**Same: EVIDENCE.** On an issue as to undue influence in the execution of a deed to grantor's housekeeper, at the suit of his heirs to set the same aside, the evidence is reviewed and held to show a voluntary conveyance rather than as the result of influence growing out of improper relations with the grantee.

**Opinion of trial court: WEIGHT GIVEN SAME ON APPEAL.** Where the evidence is conflicting the appellate court will give considerable weight to the opinion of the trial court who had the opportunity of seeing and hearing the witnesses.

*Appeal from Clinton District Court.*—HON. D. V. JACKSON, Judge.

MONDAY, NOVEMBER 23, 1908.

PLAINTIFFS, as the heirs of Wm. Semper, deceased, ask to have set aside a deed, executed by decedent about a year before his death to defendant, for one hundred and twenty acres of land, alleging that at the time the deed was executed decedent was feeble in mind, and that the defendant had been, for ten years previous, the mistress of decedent, and had become the manager of his business affairs, and by means of the influence thus acquired had procured the execution of the conveyance. There was a decree for defendant, and plaintiffs appeal.—*Affirmed.*

*Skinner & Coe* and *A. L. Schuyler,* for appellants.

*W. A. Cotton* and *Wolfe & Wolfe,* for appellee.

McCLAIN, J.—Wm. Semper, whose heirs now seek to have set aside his deed to defendant, was seventy-nine years old when the deed was executed, and was in feeble health. For ten years defendant had been his housekeeper, the relation having commenced a year before the death of Semper's wife, who was of unsound mind.

No such impairment of Semper's mental faculties was shown as to require the setting aside of the deed on the ground of incapacity alone, but his extreme age, and his consequent physical infirmities, may properly be considered in determining whether he was unduly influenced by defendant to execute the conveyance of his property to her.

1. UNDUE IN-FLUENCE: age and infirmity.

Plaintiffs attempted to prove that Semper and defendant lived in illicit relations, and invoke the rule that a woman, who by means of the influence acquired over her partner in such relations by means thereof procures a grant of property from him, will not be allowed, as against his heirs, to enjoy the benefit of

2. SAME: evidence.

such procurement.  Conceding the general rule, we are far
from satisfied that any illicit relations are established by the
evidence.   While there is direct testimony by a son-in-law
of Semper and another person that on one occasion they
played the part of eavesdroppers, and found Semper and
defendant in a compromising situation, the circumstances
as related throw grave suspicion on the truthfulness of
their story.   It was at the time made public property, but
neither the son-in-law, nor the children of Semper living
in the neighborhood, made any protest to him or defend-
ant, so far as appears, in regard to the relations in which
they were living.   The only other evidence of improper
relations is furnished by testimony of several witnesses
that it was the general belief in the community that such
relations existed.   It is not clear that this belief was not
based on the public story of the eavesdroppers, or on the
bad repute of defendant, who soon after coming to live
with the Sempers had given birth to an illegitimate child,
as the result of her seduction in another State, and be-
fore she had been brought by one of Semper's daughters-
in-law to his home to take the place of housekeeper.   The
testimony of one witness that Semper's wife committed
suicide in consequence of his relations to defendant is en-
titled to no consideration.   If, as the witness says, the wife
was insane, her belief that her husband was unfaithful
would furnish no proof of the fact.   It further appears
by testimony, entitled to as much weight, that the wife
had twice attempted suicide before defendant came to live
with the Sempers.   But we need not go into these rumors
and beliefs as to a woman who is conceded to have been
insane.   It should be said, also, that defendant as a wit-
ness consistently and emphatically denied any improper re-
lations with Semper.   Whatever may be the fact as to
the alleged improper relations between Semper and defend-
ant, such relations, if established, would only furnish evi-
dence of undue influence, and we think such influence has

been fully negatived in the record. Semper's wife was, as already indicated, mentally unsound, and incapable of attending to household duties, and defendant as housekeeper cared for both of them as long as the wife lived, and continued to keep house for Semper until his death. His children were all married and living away from home, and he was entirely dependent upon defendant for the assistance which was very important to a man of his advanced years. The evidence tends to show that defendant received very small wages, and that soon after his wife's death, and repeatedly thereafter until the deed was made, he declared it to be his intention to give defendant some land in compensation beyond the wages paid to her for her faithful and satisfactory services as his housekeeper. There is some evidence tending to show that he had already given her money beyond her wages, and that she had an account in a bank, but there is nothing to show that any money thus paid to her was regarded by him as satisfaction of his intention to make her additional compensation. Declarations of defendant that she had insisted on Semper's making the deed, which he did finally execute to her, are fully explained by the promises, which she testified were made to her, that land should thus be conveyed. Her anxiety as disclosed was that the land be secured to her before Semper's death, and if she had remained with him as housekeeper under a promise that he would do something for her in the way of conveyance of land, she was justified in urging him to perform such promise before it was too late.

But the conclusive evidence on the subject is that when Semper came to execute this deed, he consulted his banker as confidential friend, apart from defendant, as to his plans, and insisted upon making the deed, although he was advised by the banker that defendant would prefer a money consideration. After the deed was executed and delivered to defendant, it was returned by her to the

banker, to be kept until Semper's death, and in order to allay any fear in his mind that, after receiving the property, she would leave him. We are satisfied that the deed was executed voluntarily, and not as the result of undue influence growing out of improper relations, if any, between Semper and defendant.

As to the claim that defendant had so far succeeded in obtaining the entire control of Semper's business affairs that whatever he did was dependent on her instigation or approval, we find that it is without support in the evidence. Defendant may have attended to small pecuniary transactions for Semper, and may have had access to his pocketbook kept in the house, but it is clearly shown that he attended to his business in general, in his own way, and that, while defendant usually accompanied him in the last few years of his life when he went to town to transact business, it does not appear that he did not exercise full volition with reference to the business transacted.

There is much conflict in the testimony of witnesses, and the case is one in which we are justified in giving **3** OPINION OF TRIAL COURT: weight given same on appeal. considerable weight to the conclusions of the trial judge before whom the testimony was given, and we are entirely satisfied of the correctness of the court's conclusion as based on the evidence.

Appellant's motion to strike out a part of appellee's amendment to the abstract is overruled.

The decree is *affirmed.*