## Fletcher, et al. v. Nichols, et al.

(Decided January 20, 1914.)

### Appeal from Caldwell Circuit Court.

Deeds—Sufficiency of Consideration—Support and Maintenance.—
Where the grantor in a conveyance of property worth about $400 was a man of about 72 years of age, without relatives to care for him, his wife and son having been absent for twelve years, and he became so ill as to require care and attention, and was taken in by the grantee, and thereafter in about seven weeks executed to her a deed conveying his property in consideration of past

services and of support and maintenance during the remainder of his life, the grantor dying three days thereafter, the convey-ance will not be set aside, as the evidence shows the grantor was suffering from heart trouble which might cause his death at any time, and with which disease he might live for ten years; the rule being that the mere fact that the obligation assumed by the grantee subsequently proved to be less onerous than the parties contemplated will not affect the question of adequacy of consid-eration.

S. D. HODGE, JOHN CASHMAN and WILLIAM MARBLE for appellants.

J. ELLIOTT BAKER for appellees.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

On October 27, 1910, Dr. J. W. Fletcher conveyed to Mrs. M. S. Nichols, wife of J. P. Nichols, about ten acres of land in Caldwell County, together with a mare and a cow, and all his household goods, etc., together with all money in bank belonging to said Dr. Fletcher at the time of his death, if any; reserving, however, the use of his books, book case, office furniture and equipment, and the furniture for his own room, during his lifetime, the consideration for said conveyance being expressed in the following language: "Witnesseth, that the said party of the first part, for and in consideration of said second party taking care of and waiting upon said first party, who is now sick and unable to wait upon himself, said second party to provide proper and substantial food and raiment for said first party during his entire life-time; said second party has already for the past several weeks been caring for and nursing and looking after the wants of said first party; the receipt of which the said first party acknowledges."

Three days after the execution of this conveyance, Dr. Fletcher died. James L. Fletcher and Kate Fletcher, son and widow respectively of the decedent, on May 16, 1911, instituted an action in the Caldwell Circuit Court, seeking the annulment of said deed, upon the grounds that Dr. Fletcher did not sign and acknowledge same; and upon the ground that if he did sign and acknowledge it, he did not know and understand the meaning and ef-fect thereof because of a want of mental capacity to exe-cute same, and the execution thereof was obtained by the exercise of undue influence upon him by the grantee.

A creditor of the estate was also made a party defendant, and a settlement of the estate was prayed.

On motion of appellees, the court required appellants to elect whether they would prosecute the action upon the plea of *non est factum,* or on the ground that the execution of the deed was obtained by fraud and undue influence. They elected to stand upon the latter.

Afterward, on September 3, 1911, Kate Fletcher instituted an action in the same court against M. S. Nichols and her husband, J. B. Nichols, to recover the possession of a number of books, some oil paintings executed by herself, and other articles of personal property, claiming the same as her separate and individual property, the alleged aggregate value of same being $254.75.

The pleadings in both actions were completed, the two actions consolidated by agreement and tried by the court, whereupon the court rendered judgment dismissing the petition in the action of James L. Fletcher and Kate Fletcher against M. S. Nichols and J. L. Nichols, seeking annulment of the deed above mentioned; and gave judgment in favor of plaintiff in the sum of $17 in in the action of Kate Fletcher against M. S. Nichols and J. L. Nichols, brought to recover the possession of the articles of personal property mentioned. An apeal from that judgment has been prosecuted by the plaintiffs in said action.

Appellants contend that the court erred in requiring them to elect whether they would rely on their plea of *non est factum,* or on the charge of fraud and undue influence exercised by the grantee in obtaining the execution of the conveyance sought to be set aside. These pleas are inconsistent, although they could have been alleged in the alternative in this case, had the pleading conformed to the requirement of sub-section 4 of section 113 Civil Code. However, the evidence as to the execution of the deed was taken, and shows conclusively and without contradiction that Dr. Fletcher did execute the conveyance in question, so the appellants were not prejudiced by the ruling of which they complain.

It appears from the evidence that both Dr. Fletcher and his wife were well educated and cultured, and were at one time in comfortable circumstances; but reverses seem to have come to them, and in 1898, while they were living at Princeton, Kentucky, their financial condition growing worse, she determined to go to Chicago, and

make her own living at that place. She obtained employment in the Institute of Science in Chicago and remained there for some time. After that, she went to St. Louis, where she is now living with her son, the other plaintiff, J. L. Fletcher. She claims her husband acquiesced in her going to Chicago because of the fact that he was unable to provide for them in the manner suitable to their station, and that he thought it would be better for her. There is nothing in the record to contradict this, and it is doubtless true. However, neither she nor the son ever saw the doctor after 1898, and if they at any time communicated with each other, the record fails to show it.

The doctor in 1899 or 1900 moved from Princeton to Farmerville, a country village, where he practiced his profession as long as his health would permit, living alone on the little place in controversy in this action. About four months before his death, his health became so bad that he had to quit work and was confined to his room without a servant or any one to wait on or look after him, except as the neighbors would volunteer to visit him and bring him something to eat. While he was in this condition, and about two months prior to his death, the appellee, Mrs. Nichols, and her daughter visited him, taking him something to eat, and while there, the doctor proposed to her that he would give her all he had if she would take him to her home and take care of him. This she then refused to do; but told him she would send for him and take him to her home and that he might stay there until he recovered; and on the next day she accordingly did so, and he remained at her home until he died. During his stay with Mrs. Nichols he several times insisted that she agree to his former proposition to take care of him during the remainder of his life for the property mentioned; and he also made the same proposition to Dr. Frank Walker a day or so before the deed in question was executed. Mrs. Nichols accepted this proposition on the day before the deed was executed and on that day the doctor sent for a deputy county court clerk to prepare the deed, and after being informed by the doctor as to the agreement and the conditions to be named in the deed, the deputy went to his office, had the same prepared, and that evening returned. Upon an examination of the deed as prepared by the deputy the doctor found that the grantee named in the deed was

Mrs. Nichols' husband; he thereupon directed that this be changed and that she be made the grantee; he also directed that his books and instruments and some other articles should remain under his control as long as he lived. With these changes, he signed and acknowledged the deed the next morning and delivered it to Mrs. Nichols. At the time of the execution of this deed, the land conveyed was worth about three hundred and fifty dollars and the personal property not over fifty dollars, the mare and the cow mentioned in the deed being almost worthless. This does not include, however, a small amount of money in the bank, about ninety dollars, against which he had drawn a check for forty dollars. Dr. Fletcher at the time of his death was 71 or 72 years of age. He died within three or four days after the execution of the deed. Appellants contend that this is conclusive of the fact that he was without sufficient mental capacity to execute the deed, and that it was obtained by the exercise of undue influence, and that the consideration was insufficient to support the contract.

The evidence shows that Dr. Fletcher was suffering with heart disease; that his mind was strong up to the time of his death, and there is an entire absence of any evidence of undue influence or duress. The question of the adequacy of the consideration is the only one about which there can be any question, and that only because of the death of Dr. Fletcher so soon after the execution of the conveyance. It will be seen, however, that part of the consideration recited in the deed was that "second party has already for the past several weeks been caring for, nursing and looking after the wants of first party." The evidence shows that he had been at Mrs. Nichols' for eight weeks when he died, and that the services performed by her in nursing and caring for him during those eight weeks were reasonably worth twenty-five dollars per week. The physician who attended him testified that on his last visit, Dr. Fletcher was sitting up, eating, at a table before the fire; that his mind was clear, and that there was nothing in his condition upon which to base an opinion as to how long he would probably live; that he was then of the opinion, and so informed Mrs. Nichols, that Dr. Fletcher might die at any time, and he might live ten years yonger. This was within a day or two of the execution of the deed sought to be annulled.

It is said in Story's Equity Jurisprudence, section 238, that "courts of equity should be very watchful not to adopt the idea of the inequality of the contract, apparently presented by the sudden decease of the party to be maintained during life." And there is cited under this text, the case of Harrison v. Guest, 6 DeGex M. & G., 424, in which a man 71 years of age, bed-ridden and illiterate, without consulting friends or relatives, conveyed property worth four hundred pounds, for the consideration of being provided with board and lodging during the rest of his life. He lived six weks after the conveyance was made. The court refused to set it aside. And in Stanton v. Miller, 1 Thomp. & C., 23 (N. Y. Sup. Ct.), where there was a conveyance of property worth $10,000 in consideration of suport during the remainder of grantor's life, and she died a little over a month after the execution of the conveyance, the court said that "the true way to look at the transaction is to take the place of the parties as they stood at the time, and not according to the fact as it afterward resulted." And in Dunaway v. Dunaway, 105 S. W., 137, 32 R., 29, in speaking of a conveyance made in consideration of maintenance and suport during grantor's life, where the grantor died two months after making the conveyance, this court said: "The fact that subsequent events made it less onerous on the grantee than seemed likely when it was entered into, has no weight in determining its validity."

The question presented, therefore, is one of fact rather than of law. If Mrs. Nichols, at the time of the execution of the deed to her by Dr. Fletcher, knew that the hour of dissolution was near, then the inadequacy of consideration resulting from that knowledge, would create a presumption of undue influence and over-persuasion, which could not easily be overthrown. But, as has been seen, Dr. Walker informed her that Dr. Fletcher might die at any time, and he might live ten years longer; that such was the nature of the affection of the heart with which he was afflicted. There was, therefore, no such knowledge on the part of the grantee of the probability of early death, as would render the consideration subject to the imputation of inadequacy.

Stress has been laid on the fact that Dr. Fletcher was among strangers in blood, dependent upon them for care and attention, and that he executed this conveyance in the absence and without the advice of relatives. But he

had, so far as the record shows, no relatives other than the wife and son who had not visited him for more than twelve years. And, when under such circumstances, this old man's illness reached the point where he was no longer able to care for himself, and dependent on the gratuitous and irregular, if not uncertain aid of neighbors was taken into the home of Mrs. Nichols, by her given present care and attention, as well as the welcome asurance of a comfortable home during the remainder of his days; and when, in return therefor, following his own suggestion, he conveyed to her the little property he had, a court of equity will require proof of undoubted probative force and persuasiveness before it will deprive the grantee of the reward which her charity and goodness of heart have won for her.

Upon a consideration of the record, we do not feel that the evidence would justify our setting aside the finding of the chancellor in respect to the deed in question.

As to the judgment in the action for the recovery of the personal property above mentioned, the evidence as to ownership as well as value was conflicting; the chancellor saw and heard many of the witnesses testify, and while the finding is small, following our rule in such cases, the judgment will not be disturbed.

The judgment is affirmed.