## Strode's Executrix et al. v. Strode et al.

(Decided March 4, 1932.)

WM. J. BAXTER and WM. G. DEARING for appellants.

HUNT & BUSH, BAILY D. BERRY, and D. L. PENDLETON for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

J. W. Strode died on September 10, 1915, the owner of a tract of land in Fayette county, Ky., containing 485 acres, a tract of land in the city of Lexington containing

about 10 acres, and approximately $30,000 of personal property. He left a will, by the terms of which he devised and bequeathed to his wife, Irene B. Strode, 250 acres of the tract of land in Fayette county, one-half of the land in Lexington, and all of the personal property. He died intestate as to the remaining 235 acres of the Fayette county farm and the other one-half of the tract of land in Lexington. His father, W. D. Strode, was his sole heir at law.

A contest of the will instituted by W. D. Strode resulted in the will being sustained. Strode's Executrix v. Strode, 194 Ky. 665, 240 S. W. 368, 27 A. L. R. 313. On April 19, 1916, and while the contest proceeding was pending, Irene B. Strode and W. D. Strode entered into a written contract in which it was agreed, until the rights of the parties were finally determined, that Irene B. Strode should use, rent out, and handle to the best advantage the farm formerly owned by her deceased husband, and that the net rentals should be apportioned between the parties after the settlement of the will contest. The opinion on the appeal in the contest proceeding was delivered on May 5, 1922, and on July 1, 1922, after the issual of the mandate, a judgment was entered in the Fayette circuit court adjudging the paper in contest to be the last true will and testament of J. W. Strode.

On June 11, 1923, Irene B. Strode, suing individually and as executrix of J. W. Strode, deceased, brought this suit against W. D. Strode, J. H. Hardwick, F. R. Blackburn, Robert Blackburn, and V. L. Hiatt for a setlement of J. W. Strode's estate and for a construction of his will. The defendants, other than W. D. Strode, were made parties because they had purchased W. D. Strode's interest in the 10-acre tract of land in Lexington. An amended petition was filed, and later a substituted petition in which the will of J. W. Strode was set out in full. It was alleged that a correct interpretation of the will required the payment of funeral expenses, debts, and costs of administration out of the undevised real estate. A demurrer to the substituted petition was sustained, and the court adjudged that all of the debts and expenses of administration should be paid out of the personal property. That judgment was reversed by this court, and it was held that the debts and costs of administration should be charged against the undevised real estate. Strode's Executrix v. Strode, 213 Ky. 179, 280 S. W. 921.

On the return of the case to the lower court, W. D. Strode filed an answer, counterclaim, and set-off, in which he set up the written contract of April 19, 1916, between him and Irene B. Strode, and, in addition, he alleged that on March 24, 1923, he and Irene B. Strode entered into a compromise and made a final settlement of the controversy between them, in which it was agreed that Irene B. Strode should pay to him the sum of $5,218.37. It was alleged that this sum was in full settlement of all matters pending between them, including the amount due him from her operation of the farm, and for all sums due her for services in managing the farm and for attorneys' fees paid by her in the will contest. The agreement of March 24, 1923, was in writing, and signed by the attorneys of the respective parties. It reads as follows:

"Lexington, Kentucky, March 24, 1923.

"This agreement witnesseth that Mr. W. D. Strode accepts the payment of Five Thousand Two Hundred and Eighteen Dollars, and Thirty-seven cents ($5,218.37) in full and final settlement for all operations of the J. W. Strode farm by Mrs. J. W. Strode during the time she has managed same, this sum to be paid by her to him, and this sum is to cover her claims for services and for attorneys' fees paid by her in the Will Contest and to be paid by her in full settlement of all matters between them.

"It is further agreed that the Alford Avenue property in Lexington, Kentucky, and the proceeds of any sale of same shall stand as security to Mrs. Strode to cover and pay the Federal Estate and State Inheritance taxes until same are finally settled and paid as may be finally assessed against the parties hereto.

"As to the said City property the parties hereto agree to cooperate in the handling and sale of same, and that it is now thought advisable to plat and sell same.

"Witness the hands of the parties hereto this 24th day of March, 1923.

"W. D. Strode
    "By D. L. Pendleton, Attorney
"Irene B. Strode,
    "By D. L. Hazelrigg, Attorney."

The plaintiff filed a reply in seven paragraphs, an amended reply in two paragraphs, and a second amended reply in three paragraphs. A demurrer to each paragraph of the reply, the amended reply, and second amended reply was sustained, except to the first and last paragraphs of the reply. The first paragraph of the reply is a traverse of the material allegations of the answer. The last paragraph alleges a mistake in the calculation, and alleges that, if the contract of March 24, 1923, is binding, the amount should be $4,292.90 instead of $5,218.37. The issue raised by the pleadings was whether or not a valid and binding settlement had been made. A large amount of proof was heard, and the lower court held that the compromise in question had been made and was valid and binding, and rendered a judgment against Irene B. Strode in favor of W. D. Strode for the sum of $5,218.37, with interest from March 24, 1923. Irene B. Strode has appealed.

It is insisted by the appellant on this appeal that the lower court erred in sustaining the demurrers to the various paragraphs of the reply, amended reply, and second amended reply, and that, if she is in error in this contention, the finding of the lower court is against the preponderance of the evidence. The second paragraph of the reply is a plea of rescission. It is alleged that W. D. Strode, by filing a demurrer to the petition, thereby raising the issue as to whether or not the debts and costs of administration should be paid out of the undevised estate, rescinded the alleges contract of March 24, 1923. The third paragraph alleged that the defendant W. D. Strode, had the choice of two remedies: (1) To stand by the alleged contract of March 24, 1923; and (2) to ignore this contract and elect to take under the will and make the devised estate pay all of the debts and costs of administration, and that he had elected the second remedy. The fourth paragraph pleads estoppel by reason of defendant having ignored the contract and having filed and insisted upon his demurrer.

The amended reply and the second amended reply are merely amplifications of the pleas in the second, third, and fourth paragraphs of the reply. These pleas resolve themselves into the one question of whether or not a defendant whose demurrer to the petition has been sustained and judgment entered may, after the reversal of that judgment, file an answer setting up a defense. Where a petition does not state facts constituting a cause

of action, a demurrer on the ground of insufficiency is the proper mode of raising and presenting the question for decision to the court. Civil Code of Practice, sec. 93. A demurrer admits the truth of all facts well pleaded. Bonham v. Dotson, 216 Ky. 660, 288 S. W. 297; First National Bank of Jackson v. Hargis Commercial Bank & Trust Co., 170 Ky. 690, 186 S. W. 471. A litigant in filing a demurrer to his adversary's pleading admits for the purpose of determining whether or not the pleading is sufficient the truth of the facts alleged, but, if his demurrer is overruled, he is not precluded from filing an answer or other defensive pleading. Section 133 of the Civil Code of Practice specifically provides that, upon a demurrer being overruled, the party demurring may file an answer, reply, or additional pleading. The defendant has the right both to test the sufficiency of the plaintiff's petition by a demurrer, and, if the demurrer is overruled, to set up a defense in an answer. A demurrer and an answer are not inconsistent pleas or methods of procedure. If a plaintiff has no cause of action, the sustaining of a demurrer to his petition precludes the necessity of further proceedings.

Here the defendant's demurrer was sustained, and he was under no compulsion to file an answer until the judgment sustaining his demurrer was reversed. Appellant cites numerous authorities in support of her theory that the doctrine of election of remedies applies and that, the defendant having elected to test out the question as to whether or not under the will of J. W. Strode, deceased, the debts and costs of administration should be paid out of the devised property by filing a demurrer to the plaintiff's petition, he cannot now rely upon another defense, to wit, the contract of March 24, 1923. It would unduly lengthen this opinion to differentiate these cases from the instant case, but it is sufficient to say that in none of them was it held that the doctrine of election of remedies, or the doctrine of estoppel based thereon, applied where a defense was made after a demurrer to the petition had been overruled. The most recent case cited is that of Crider v. Melvin, 235 Ky. 523, 31 S. W. (2d) 913. All that was decided in that case was that, if the facts are well pleaded in a petition, a judgment sustaining a demurrer is in effect a decision upon the merits of those facts, and is a bar to another suit upon substantially the same facts. It appeared that the allegations of the petition in the second suit were sub-

stantially the same as the allegations of the petition to which a demurrer had been sustained. Riley v. Cumberland & Manchester Railway Co., 234 Ky. 707, 29 S. W. (2d) 3, is also cited. As stated in the opinion in that case, the question for decision was whether a party may seek and obtain specific performance of a contract, and thereafter institute action to recover damages occasioned by the delay in compelling specific performance. It was held that plaintiffs had two coextensive remedies, the one inconsistent with the other. They could have their contract executed by a suit for specific performance or they could have damages in an action at law for its breach. When they chose to have their contract with the defendant executed, that was an irrevocable election of remedies. The two positions taken by the plaintiffs in that case were wholly inconsistent, but in the present case it did not amount to an inconsistent claim on the part of the defendant when he filed an answer setting up the contract of March 24, 1923, after his demurrer to the petition of the plaintiff on the ground of insufficiency had been overruled.

In 21 R. C. L. 504, it is said:

"On the filing of a pleading, it is obvious that the first question that must arise is as to whether, taken as a whole, it states a cause of action or defense. To determine this question is fundamentally the object of a demurrer, and the question is properly raised by a demurrer rather than by a motion for a directed verdict. Hence it is that a demurrer is an objection made by one party to his opponent's pleading, alleging that he ought not to answer it, for some defect in law in the pleading; and this, as to a complaint, calls in question not only the sufficiency of the facts to constitute a cause of action, but also the right of the plaintiff to maintain the suit. It is clear, in order to put the test as to the legal sufficiency of a complaint or other pleading, that, for the purpose of the hearing on demurrer, the facts pleaded must be taken as true. In other words, a demurrer raises an issue of law, the determination of which constitutes a trial by a court. It does not raise any question of fact, or a mixed question of law and fact."

And on page 512 of the same volume the text reads:

"It is a general rule that where a party demurs to a pleading and pleads to the merits at the same time, he thereby waives the demurrer; and if he has answered and afterward demurs, his answer is deemed to be thereby withdrawn, waived, or abandoned. From the nature of a demurrer it is obvious that an issue of fact and a demurrer cannot both be allowed to reach the same pleading at the same time, although a defendant may plead the general issue to one count of a declaration, and demur to other counts. In certain respects the general rule has been changed by statute so as to allow a defendant to plead as many several matters, whether of law or fact, as he shall think necessary; but where this commingling of matters of law and fact occurs, or where a demurrer and an answer are filed simultaneously, as may, at times be permitted under modern practice, it is obvious that all law issues should be first tested and decided, leaving the answer for subsequent determination of the issues raised by it."

Section 113, subsec. 2, of our Civil Code of Practice, provides that a pleading may contain statements of as many causes of action, and may make as many traverses, and may present as many demurrers, as there may be grounds for in behalf of the pleader. If a person has a choice of remedies, he may elect, but, unless two causes of action or two defenses exist, and they are inconsistent, there can be no election. Here the defendant did not have the choice of two remedies. If the plaintiff had a cause of action, the defendant had one defense, to wit the contract of March 24, 1923, which could only be set up in an answer. He had the right to have the court determine whether or not plaintiff had stated a cause of action independent of any defenses he might have. The filing of the demurrer was merely a procedural method for having this preliminary question determined. We conclude that the defendant by filing the demurrer did not rescind the contract thereafter relied upon as a defense, nor was he estopped thereby from setting up the defense set up in his answer, counterclaim, and set-off. It is also argued that W. D. Strode abandoned the contract of March 24, 1923, because in violation of its terms he sold his interest in the property in Lexington on

April 16, 1923. In the contract the parties agreed to co-operate in the handling and sale of this property. Before W. D. Strode sold his interest, Mrs. Strode had announced that she would not comply with the terms of the contract. He could expect no co-operation from Mrs. Strode after her repudiation of the contract, and, under the circumstances, he was free to handle his interest in the property in the manner deemed best by him without any right on her part to complain that this vague and indefinite provision of the contract had been violated. The demurrers to paragraphs 2, 3, and 4 of the reply and to the various paragraphs of the two amended replies were property sustained.

Two paragraphs of the reply alleged in substance that the compromise agreement of March 24, 1923, was without consideration because the plaintiff had the right to take charge of the real estate of the testator, both devised and undevised, and to handle it until all obligations were paid. The compromise agreement was partly based on the contract of April 19, 1916, under which Mrs. Strode took charge of the land and managed it for approximately seven years. The undevised real estate vested in W. D. Strode at the death of the testator and not in the executrix, and it was a controversy growing out of her management of the farm under the 1916 contract, as well as a controversy over the amount of fees to be paid to her attorneys in the will contest, that was settled by the compromise agreement of March 24, 1923. The amount that should be allowed to Mrs. Strode for her services in managing the farm was in dispute, and in the settlement she was allowed $5,250 for these services. The correctness of the account submitted by her showing the receipts and disbursements over a period of seven years, involving hundreds of items, was likewise in dispute. The agreement was not without consideration, and the demurrers to these paragraphs of the reply were properly sustained.

Appellant also complains because the lower court required her to elect whether she would rely on the first or the last paragraph of her reply. In paragraph 1 she denied that a compromise was made or that the contract of March 24, 1923, was entered into. In the last paragraph of the reply she alleged that a mistake was made in the compromise agreement of March 24, 1923, and sought to have the contract reformed. If, as argued by

the appellee, these two paragraphs of the reply contained inconsistent pleas, the court properly required the plaintiff to elect. Lewis v. Durham, 205 Ky. 403, 265 S. W. 934; Fletcher v. Nichols, 157 Ky. 23, 162 S. W. 544; Berry v. Evans, 89 S. W. 12, 28 Ky. Law Rep. 22; Black v. Holloway, 41 S. W. 576, 19 Ky. Law Rep. 694. But, waiving that question, no error resulted, since the pleading and proof disclosed no mutual mistake such as would entitle appellant to a reformation of the contract. The mistake, if any, was occasioned by errors in certain items representing receipts from the farming operations used in the conference at Lexington as a basis for the settlement. These items were furnished by the accountant employed by appellant and who represented her at the conference. The figures presented by him were not accepted in toto, but were used as a basis in arriving at a compromise agreement, and finally a lump sum was agreed upon in settlement of all matters in dispute between the parties. It is claimed that in the statement prepared by appellant's accountant and used at the conference certain receipts from the farming operations were duplicated. Even if the statement of the account of the farming operations prepared and submitted by appellant contained the errors alleged, it is not certain the final settlement would have been different. Conceding that the alleged errors in the statement prepared by her representative existed, it cannot be determined now with certainty what the result would have been had a correct statement been submitted at the time the conference was held at which a compromise agreement was reached, and appellant should not be permitted under the circumstances to take advantage of her own error.

The only question left for determination is, Did the lower court err in adjudging that the compromise agreement of March 24, 1923, was entered into by Irene B. Strode and W. D. Strode, and that it was valid and binding? A large amount of proof was heard and a number of attorneys and others who represented Mrs. Strode and W. D. Strode at the time the alleged agreement was made appeared as witnesses. It appears that D. L. Hazelrigg and W. G. Dearing, attorneys representing Mrs. Strode, J. W. Parrish, an accountant employed by her, D. L. Pendleton, an attorney representing W. D. Strode and Clayton Strode and Virgil L. Hiatt, son and grandson respectively of W. D. Strode, met at the La

Fayette Hotel in Lexington on March 24, 1923, for the purpose of trying to adjust the matters in controversy. They were in conference during the entire day, and the attorneys representing Mrs. Strode finally agreed to recommend to their client that she should pay to W. D. Strode the sum of $5,218.37 in full settlement of all matters between them. The only conflict in the evidence is as to whether Mrs. Strode agreed to the settlement recommended by her attorneys. It was put in writing, and was signed as follows: "W. D. Strode, by D. L. Pendleton, Attorney—Irene B. Strode, by D. L. Hazelrigg, Attorney." Mrs. Strode, who was in the hotel during the day, but not in the room where the conference was held testified that she was informed by her attorneys that the settlement would not be binding until it was approved by W. D. Strode, who was not present, and until his approval was secured she could revoke any offer of compromise she made, and that they would not make the final settlement until the following Tuesday, when W. D. Strode would be present.

Immediately after the conference between Mrs. Strode and her attorneys, the contract was prepared and signed by one of the attorneys representing each of the parties. On the following day Mrs. Strode notified her attorneys that she was not satisfied with the settlement. It is clear from the evidence that Mr. D. L. Pendleton had full authority to enter into a binding contract on behalf of his client. There is some conflict in the evidence as to what was said about procuring W. D. Strode's approval of the settlement. Mr. Pendeleton testified positively that he had authority to enter into a binding contract on behalf of his client, and he made no statement to the effect that it would be necessary to obtain his client's approval of the settlement, but that it was understood that in the meeting to be held on Tuesday of the following week W. D. Strode would be present, and the provisions of the contract would be carried out by the execution and delivery of deeds, checks, and other necessary papers. His testimony is supported by that of Clayton Strode and Virgil L. Hiatt. It is also clear that it was Mr. Hazelrigg's understanding at the time that a final and binding settlement had been made and that he had authority to sign the contract for his client. We think the evidence demonstrates that at the conclusion of the conference held in Lexington the principals and their representatives understood that a final settlement had

been reached, and that the agreement was reduced to writing and signed by attorneys clothed with authority to bind their clients. Even if the mind were left in doubt on this point, the finding of the chancellor would control.

Judgment affirmed.