MINNIE R. COLLINS, ADMINISTRATRIX (ESTATE OF WILLIAM J. WORDEN) vs. HELEN DUNN ERDMANN.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued March 4th—decided April 7th, 1937.

*Leonard McMahon,* for the appellant (defendant).

*Henry C. Wilson,* for the appellee (plaintiff).

HINMAN, J. The finding, with such material corrections as are justified by the record, includes the following facts: William J. Worden, the grantor in the deed here in question, and his wife had lived for many years on the property conveyed, in Danbury. At the time of the execution of the deed he was about sixty-five years of age and a chronic alcoholic. His nearest relatives were first cousins. The defendant and her husband had been frequent visitors at his home for several years. During the fall of 1933 Mrs. Worden had been quite ill and the defendant, who is a domestic nurse, had frequently been at the home assisting in her care and in household duties. In the early part of December Mrs. Worden was again ill and about the 16th or 17th the defendant, at the re-

quest, by telephone, of Mr. Worden, called at the home. Mr. and Mrs. Worden were then both very ill, Dr. Bronson was in attendance upon them, and on December 19th, upon his advice and that of the defendant, both entered the Danbury hospital. Thereafter the defendant called upon them frequently and Dr. Bronson saw them daily. Dr. Gordon, an eye, ear, nose and throat specialist, examined Worden and found that he had a serious muscular tremor, was suffering from acute mastoiditis, had septicemia, and his vitality and reaction were very low. On December 21st Dr. Gordon performed a mastoid operation upon him. On December 23d Mrs. Worden died at the hospital. After the mastoidectomy Worden appeared for a few days, except for pain in his shoulder, to be making a normal recovery, but on January 1st, 1934, his temperature rose suddenly and on January 2d his condition was considered by Dr. Gordon as very serious. Two allonal tablets were administered to him, also calomel in the quantity of one-tenth of a grain every fifteen minutes until ten doses had been given, and thirty grains of aspirin. The next day, January 3d, at 4 a. m., his temperature was 101 and it increased to 104 at 4 p. m. At 10.20 a. m., one-sixth of a grain of morphine was administered and at 9.43 p. m. one-quarter of a grain. During the day an ounce of cough medicine containing codeine was given him in small doses, also one hundred and twenty grains of aspirin. Hot poultices and hot water bottles were applied to his shoulder to concentrate an abscess then developing. Morphine, allonal and codeine are depressives and affect the nervous and mental systems. Physically and mentally Worden was in an abnormal condition, excitable at times, at others much depressed and giving way to spells of crying.

Upon the death of Mrs. Worden Dr. Bronson con-

ceived the idea of the defendant taking care of Worden on his return home and suggested it to her but she was unwilling to do so unless he turned his property over to her. During the evening following the death of Mrs. Worden or the next day, the conveyance of his property to the defendant was first suggested to Worden either by the defendant or Dr. Bronson. In the afternoon of January 2d the defendant with an attorney, whom she had requested to draw a deed from Worden to her, called at the hospital and discussed with Worden a conveyance of the property to her. Next morning, January 3d, between 10 and 11 o'clock, the defendant called at the attorney's office and he drew a quitclaim deed of Worden's real estate to the defendant, reserving (at the suggestion of the attorney) a life use of the house. Information for the description was provided by Worden's deeds which Dr. Bronson took to the attorney. The attorney then took the deed to the hospital, where it was executed, and thence to the town clerk's office, where he filed it for record. During these transactions the defendant waited at his office.

The land conveyed consisted of three pieces, approximately eighteen acres, with a house and other buildings, subject to a mortgage of $2500. The only consideration for the conveyance was a claimed oral promise to care for Worden as long as he should live. The defendant and her family moved into the house directly afterward and have occupied it ever since, subject to the occupancy of one room by Worden from the time he left the hospital until his death. The defendant soon sold one piece of the land for $3100 and with a substantial part of the proceeds caused improvements to be made upon and about the house. The value of the remaining property was estimated at the time of the trial at $6100. After the convey-

ance of this property to the defendant Worden had no estate remaining except an indebtedness from Dr. Bronson, which was not in excess of $5200 and might not be due until January, 1939, unless Bronson sold lots from certain land, when payment on account should be made. At the time of the conveyance Worden was in debt, there were two attachments on the property, the telephone and electric service had been discontinued because of nonpayment, and there were taxes and interest on the first mortgage due, and his indebtedness was increasing due to his illness and the operations he had to undergo, all of which was known to Dr. Bronson and the defendant. Bills against Worden have been presented to the administratrix of his estate to the amount of $5450.36.

For a considerable period of time after January 3d Worden continued to be in a critical condition. On January 5th, five hundred centimeters (fifteen to seventeen ounces) of blood were transfused into his system and on January 9th another mastoid operation was performed upon the other side of his head and another blood transfusion given. Because of a thrombosis, on January 11th he underwent an operation upon the sigmoid sinus, which is under the mastoid area. This operation involved cutting away the skull bone to the brain and the ligating of an internal jugular vein, a serious operation. On February 4th an incision was made over the right shoulder joint and a large amount of pus was removed from the abscess and drains were applied, and it was necessary to reopen the shoulder on February 9th. The conditions necessitating all the operations resulted from his chronic alcoholism and the original mastoiditis and were developing over a considerable period of time. He was discharged from the hospital March 14th, 1934, and thereafter occupied a room in the house

which he had conveyed to the defendant and the defendant furnished him with his meals and such nursing care as he required.

It is found that Worden was easily influenced and subject to the will or suggestion of others, particularly of Dr. Bronson with whom he had been acquainted for several years, who had treated him professionally, and with whom he had had business relations since July, 1929, when the doctor purchased from him under a bond for a deed a tract of land located on Lake Candlewood for development purposes. This bond for a deed had been amended by agreement of the parties so that the time for final payment was postponed to January 13th, 1939. After leaving the hospital and being told that he had conveyed the property he consulted an attorney, stating that he had no recollection of the conveyance, employed him to search the land records, and requested him to bring an action to set aside the conveyance, but he died September 24th, 1934, without having caused such an action to be brought.

The trial court concluded, from the facts found, that the conveyance was procured through undue influence, was a fraud upon Worden and his creditors, and that the plaintiff was entitled to a decree setting it aside. Such corrections of the finding as have been granted do not materially affect the validity of these conclusions.

The appellant assigns error in that the complaint does not warrant the judgment because, she claims, it contains no allegations that the deed was obtained by undue influence, that it does not allege such influence by Dr. Bronson or any third party, also that there is no evidence that it was induced by undue influence. The complaint alleges that the defendant "by reason of arts, wiles, blandishments and misrepresentations"

procured the execution of the deed by Worden. While this form of allegation is somewhat archaic it has been employed frequently in the past in setting up undue influence and the course of the trial, as disclosed by the record, indicates that the pleadings were construed as presenting that issue and as the principal one relied on by the plaintiff; also that no objection was made on the ground that, so construed, although the allegation referred to the defendant only, the proof pointed to participation by Dr. Bronson. A claim of variance, if not advanced in the trial court, is not available on appeal. *Weiner* v. *Loew's Enterprises, Inc.,* 120 Conn. 581, 584, 181 Atl. 921; *Chinigo* v. *Ehrenberg,* 112 Conn. 381, 383, 152 Atl. 305.

As to the support afforded by the facts to the conclusion that such influence was successfully exerted, the existence and exercise thereof is not often susceptible of direct and positive proof but may be and usually, if established, must be inferred from all the facts and circumstances of the case. Among the relevant and significant circumstances are the situation of the grantor and his relation to others, his condition of health and its effect upon body and mind, his dependence upon and subjection to the persons claimed to have influenced him and their opportunity to wield such influence. *Dale's Appeal,* 57 Conn. 127, 134, 17 Atl. 757; *Preston* v. *Preston,* 102 Conn. 96, 109, 128 Atl. 292. If the will power has been weakened, as by severe sickness, the natural resistance to influence is of course impaired. *Semper* v. *Englehart,* 140 Iowa, 286, 118 N. W. 318. Haste, especially when without adequate reason, in carrying through a conveyance is justly regarded as a suspicious circumstance. *Preston* v. *Preston,* supra, p. 116. So, also, is an expectation by those exerting the influence, of impending or early death of the grantor, when the only consideration is

his care and support. *Fletcher* v. *Nichols*, 157 Ky. 23, 26, 162 S. W. 544; 18 C. J. p. 238. Attending physicians are included among those assumed to have special opportunities for exerting influence. *Gager* v. *Mathewson*, 93 Conn. 539, 543, 107 Atl. 1. It is immaterial whether the influence is by the beneficiary, by an outsider, or by both. *Addis* v. *Grange*, 358 Ill. 127, 192 N. E. 774, 96 A. L. R. 607, 612.

As depicted by this record, Worden, his vital energies depleted by dissipation and developing disease, as well as by age, finally came into a condition requiring hospital care, as did his wife of many years, and the latter soon died. Lack of interested relatives left him in a position of particular dependence upon the good offices of the defendant and the physician who had not only professional but also intimate business relations with him. Within a few days after he had undergone a major operation, and a few hours after the passing of his wife, when his mental condition may well have been one of desperate desolation and of despair as to his future welfare, a proposition was broached to him that, although it involved ignoring his past and presently mounting financial obligations, he convey his tangible assets to the defendant upon her parol promise to care for him. When, a few days later, his condition took a turn for the worse and became "very serious" the defendant obtained an attorney to prepare and have executed the deed which was intended to effectuate that proposal. The facts found as to Worden's condition at that time and the medicines administered to him indicate, at least, its inappropriateness to an occasion for the exercise by him of such "free and deliberate judgment" as would tend to negative undue influence. *Preston* v. *Preston*, supra, p. 110. That he was able to survive his present and subsequent ordeals and to return home for a few

months is surprising in retrospect and may well have exceeded expectations at the time. These and other considerations arising from the facts and circumstances warrant the conclusion that, although there be no direct and positive evidence of undue influence, the trial court might justly and reasonably draw therefrom an inference of such influence exerted upon Worden. That is sufficient to support the judgment without aid from the additional and apparently subsidiary conclusion that the conveyance was in fraud of Worden and his creditors and it is unnecessary to determine the legal sufficiency of the latter, of itself, as a ground for setting the deed aside.

The judgment is not grounded upon lack of mental capacity, as such, of Worden to execute the deed, nor is there a conclusion expressed to that effect. The rule invoked by the appellant, that the testimony of the attorney taking the acknowledgement of the deed is entitled to particular consideration (8 R. C. L. p. 944), while appropriate to an issue as to mental capacity is inapplicable here. Although it is incumbent upon him to take reasonable means to ascertain the mental competence of the grantor, he need not be conversant with the circumstances preliminary to the conveyance or the means by which it was procured, nor did he assume to be in this instance. One of the defendant's claims of law was that the deed should not be set aside without any offer having been made by the plaintiff to restore her to her original position. The plaintiff having resorted to a proceeding in equity, it was open to the defendant to procure, in the judgment, provision for any restoration which she merited, but the finding fails to show any facts establishing that she was entitled to any sum by way of restitution. The further claim that there was subsequent ratification by conduct by Worden presented a question of fact. *Gold-*

*berg* v. *Krayeske,* 102 Conn. 137, 141, 128 Atl. 27. The trial court did not find that the conveyance had been so affirmed and the facts found as to the steps taken by Worden toward the institution of the proceedings to avoid the deed indicate the contrary.

There is no error.

In this opinion the other judges concurred.