Olga Fritz *v.* Stanley Mazurek et al.

King, C. J., Alcorn, House, Thim and Ryan, Js.

Argued May 9—decided June 11, 1968

*Sebastian J. Russo,* for the appellant (named defendant).

*Israel Poliner,* with whom, on the brief, was *Myron J. Poliner,* for the appellee (plaintiff).

THIM, J. In this action, the plaintiff sought cancelation of a quitclaim deed which she had executed on February 17, 1964, conveying an apartment building at 27–29 Woodside Circle in Middletown to the named defendant, subject to a life estate in the plaintiff. The court concluded, inter alia, that the plaintiff had executed the aforementioned deed as a result of undue influence. The court rendered judgment for the plaintiff against the named defendant and for Mildred Frazier, the other defendant. The named defendant, hereinafter referred to as the defendant, has appealed.

The finding, which is not subject to any material correction, discloses the following: The plaintiff is a widow. When the case was tried in the autumn of 1966, the plaintiff was approximately seventy-nine years old although she thought she was fifty-three. The plaintiff came to this country from Germany at the age of fifteen. She did not attend school in this country. She speaks English with difficulty and is unable to read or write English although she can write and recognize her own name. Her husband died in 1948, and she became the sole owner of the property at Woodside Circle. The property is unencumbered and has a fair market value of $29,500.

The plaintiff had one child, three grandchildren

and four great grandchildren. Her child, Martha, was married to Bruno Sutkowski. Martha and her husband lived in Cromwell. A close relationship existed between the plaintiff and Martha, and the plaintiff was a frequent overnight guest at Martha's home.

The defendant had been a roomer at Martha's home since 1949. He paid rent, purchased food and paid for a cook when one was needed. In August, 1963, Martha's husband departed on unfriendly terms. The defendant, however, continued to reside in Martha's home.

During 1963 and 1964, the plaintiff was infirm and not in good health. She trusted her daughter implicitly and would sign documents at her daughter's request. In the fall of 1963, Martha took the plaintiff to the office of an attorney. Martha did most of the talking. She told the attorney to prepare a conveyance of the Woodside Circle property from the plaintiff to the defendant so that the defendant could look after the property and also take care of both her and the plaintiff. She also instructed the attorney to prepare a support agreement whereby the defendant would be obligated to support the plaintiff during her lifetime. The attorney suggested that the plaintiff retain a life estate in the Woodside Circle property. He also explained the effect of the proposed deed to the plaintiff. Although the plaintiff realized that the discussion had something to do with her support, she did not comprehend or appreciate the fact that it concerned a conveyance of her property. The defendant was not at the attorney's office, nor was he aware of the plan which was being formulated. When asked by Martha, however, he had stated that he would be willing to support the plaintiff so long as she re-

sided with Martha and himself at Cromwell. He further stated that he would sign an agreement to that effect.

On January 9, 1964, Martha suffered a stroke and was hospitalized. While in the hospital, she requested the attorney to visit her. On his visit, Martha admonished him because he had not, as yet, prepared the deed and the support agreement which she had requested. He promised to prepare them forthwith.

While Martha was in the hospital, the plaintiff stayed at the home of the defendant Mildred Frazier. During her stay, she was ill and was visited by a doctor. On February 17, 1964, as a result of a telephone call from the attorney, Mildred Frazier took the plaintiff to the attorney's office, where the plaintiff signed the deed and the support agreement. Because of her illness, Martha did not accompany the plaintiff to the attorney's office. Neither the quitclaim deed nor the support agreement were read or explained to the plaintiff at this time. She did not comprehend that she was conveying her property, but she signed the instruments because Martha had previously told her to do so. Later the same day, the attorney met the defendant and requested him to sign the support agreement, which he did without reading it. The defendant did not realize that an interest in the plaintiff's property had been conveyed to him until a fellow worker told him of reading about it in the newspaper. The defendant asked Martha about the transaction, and she told him that the Woodside Circle property was his and that he had to support her and the plaintiff.

In March, 1964, the plaintiff had individual savings accounts in two banks totaling almost $18,000.

About March 13, 1964, she signed documents making both of these accounts joint accounts with the defendant. Again, the plaintiff had no idea that she had created joint bank accounts, nor did the defendant realize that this was being done. Martha subsequently delivered the deposit books to the defendant.

Martha died on April 20, 1964. Only after Martha's death did the plaintiff learn, for the first time, the ramifications of the aforementioned transactions.

On demand by the plaintiff's attorney, the defendant returned both of the bank books to the plaintiff. He had not withdrawn any funds. He refused, however, to reconvey his interest in the Woodside Circle property although he had at no time, either before or after learning of the conveyance, given any consideration for that conveyance.[1]

On the basis of the aforementioned facts, the court concluded that the quitclaim deed was the product of the undue influence exercised by Martha over the plaintiff. That conclusion must stand unless it is legally or logically inconsistent with the facts or unless it involves the application of an erroneous rule of law material to the case. *Solari* v. *Seperak,* 154 Conn. 179, 184, 224 A.2d 529; *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855. "In order for a deed to be a valid instrument of conveyance the grantor must have intended to execute it. Lacking such intent the instrument has no effect. In the case of undue influence such intent is lacking. If undue influence has been exerted upon the grantor the deed is voidable, but not absolutely void.

---

[1] It should be noted that the plaintiff has expressly abandoned any claim she may have had against the defendant under the support agreement.

'Undue influence' is the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised. It is always a good ground for setting aside a conveyance procured thereby, when exercised to such an extent as to control the will of the grantor." 6 Thompson, Real Property (1962 Repl.) § 2971.

We cannot say that the court's conclusion that the deed was the product of undue influence was illegally or illogically drawn from the facts found. It seems apparent that the entire scheme for the disposition of the plaintiff's property was conceived by Martha and was carried to its fruition solely as the result of the influence which Martha was able to exercise over the plaintiff because of the trust and reliance which the plaintiff placed in her daughter and the weakened physical and mental state of the plaintiff.

The defendant correctly points out that the finding in no way implicates him in the machinations which led to the procurement of the deed. This is immaterial. A deed procured by undue influence is voidable regardless of whether the undue influence was exercised by the grantee or by someone else. *Collins* v. *Erdmann,* 122 Conn. 626, 633, 191 A. 521; note, 96 A.L.R. 613; 6 Thompson, op. cit. § 2971, p. 194; 23 Am. Jur. 2d 198, Deeds, § 153; 26 C.J.S. 770, Deeds, § 62 (d). The defendant cannot claim to be a bona fide purchaser for full value. See 6 Thompson, op. cit. § 2977, p. 237. Nor do the facts disclose that the plaintiff in any way ratified the conveyance after learning of it. *Collins* v. *Erdmann,* supra, 634.

Because the court's conclusion of undue influence

must stand, there is no need to consider whether the other conclusions challenged by the defendant are correct since the ultimate result would not be affected. *Goldstein* v. *Hartford,* 144 Conn. 739, 740, 131 A.2d 927.

There is no error.

In this opinion the other judges concurred.