ROSE VALLEY, EXECUTRIX (ESTATE OF JOSEPHINE FAZZINA) *v.* SALVATORE FAZZINA

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued April 6—decision released June 22, 1982

*Wesley W. Horton,* with whom, on the brief, was *Richard D. Gilland,* for the appellant-appellee (plaintiff).

*Timothy Sheehan,* for the appellee-appellant (defendant).

SHEA, J. This action was originally brought by the decedent, Josephine Fazzina, to set aside a conveyance which she had made of a multi-family house in New Britain to her son, the defendant, on July 15, 1976. She died on October 5, 1978, while the action was pending. Her daughter, Rose Valley, was appointed executrix pursuant to the will of the

decedent and she was substituted as the plaintiff. The case was tried before a jury whose verdict consisted of answers to three interrogatories which had been submitted. The trial court regarded the answer given to one of these questions as inconsistent with the other answers and, after discussing the situation with counsel, resubmitted the interrogatories to the jury. Upon further deliberations, the jury changed only the answer to the interrogatory which had been mentioned as conflicting with the others. The trial court, in accordance with the revised answers to the interrogatories, rendered judgment for the defendant. The plaintiff executrix has appealed claiming error in the action taken by the court in resubmitting the interrogatories to the jury.

The defendant has filed a cross appeal in which he claims that the motion to substitute the executrix of the decedent as the party plaintiff was improperly granted because the six-month period following the death of the decedent allowed by General Statutes § 52-599 had then expired.[1]

The complaint was in two counts, the first alleging fraud of the defendant in inducing his mother to execute the conveyance, and the second claiming that he used undue influence upon her. The trial court charged the jury upon these two issues. Three

---

[1] General Statutes § 52-599 provides in part as follows: "In case of the death of any party plaintiff, his executor or administrator may enter within six months thereafter and prosecute the suit in the same manner as his testator or intestate might have done if he had lived . . . ."

The motion to substitute the executrix in this case was filed on April 10, 1979, six months and five days after the death of the decedent. See *Worden* v. *Francis,* 170 Conn. 186, 188, 365 A.2d 1205 (1976); *Dorsey* v. *Honeyman,* 141 Conn. 397, 400, 107 A.2d 260 (1954); *Clemens* v. *Harris,* 120 Conn. 111, 113, 179 A. 334 (1935).

questions were, nevertheless, submitted to the jury as follows: "1. Under all the circumstances and all of the evidence presented in this case, did Salvatore Fazzina obtain title to #68 Robert Street on July 15, 1976, by means of any untrue representations with the intent to induce his mother to execute the deed by reason of such fraudulent representations? 2. Under all of the circumstances and all of the evidence presented in this case, did Salvatore Fazzina obtain title to #68 Robert Street on July 15, 1976, by means of undue influence? 3. Did Josephine Fazzina intend to convey her property on July 15, 1976, at 68 Robert Street, New Britain, to the defendant, her son Salvatore Fazzina, fully understanding what she was doing?" The initial response of the jury was negative to all three questions. Such an answer to the third question, however, implied that the decedent did not intend to convey her property to the defendant and that she lacked full understanding of her action in signing the deed. For this reason the trial court did not accept the verdict after it was announced but requested the jury to retire while the matter was discussed with counsel.

The attorney for the defendant maintained that the answers to the first two questions adequately resolved the issues raised by the complaint and that judgment should enter for the defendant accordingly. The attorney for the plaintiff contended that the answer to the third question was "clearly in opposition" to the other answers and requested resubmission of the interrogatories. The trial court denied the motion for judgment and submitted the same three questions on a new form without any marking to indicate the previous answers. The court pointed out that the third

answer seemed inconsistent with the first and second, but also remarked, "if I'm wrong and you have some question that you desire to ask, you must submit it in writing and I'll try to respond to it." No exception was taken to the instructions which attended the resubmission. Ultimately the jury returned with the same negative answers to the first two questions but with an affirmative answer to the third question.

The plaintiff contends that the court erred in resubmitting the interrogatories to the jury because the original answers were not actually inconsistent. As she argues, it was possible for the jury to find that there was no fraud or undue influence on the part of the defendant, but that, nevertheless, the decedent did not intend to convey her property to him "fully understanding what she was doing." She could have lacked the necessary mental capacity or she might have acted by mistake. There was testimony by two witnesses who spoke to the decedent soon after the execution of the deed that she thought the instrument she signed was a medical insurance or social security form or a will. The plaintiff maintains that the initial negative answer to the third interrogatory constituted a finding that the decedent did not realize that she was transferring her property to the defendant and that the conveyance should have been set aside on the basis of that finding, regardless of the answers to the other questions.

In pursuing this claim of error the plaintiff is faced at the outset with not only her failure to object or except to the resubmission of the interrogatories but also her acknowledgement that the answer to the third interrogatory was opposed to

the other answers and her request for a resubmission. We do not ordinarily consider a claim of error unless it was distinctly raised at the trial or arose subsequent to the trial. Practice Book § 3063. This policy has special significance where the error complained of is induced by some action of the appellant. *Velardi* v. *Selwitz,* 165 Conn. 635, 641, 345 A.2d 527 (1974); *Busko* v. *DeFilippo,* 162 Conn. 462, 469, 294 A.2d 510 (1972); *Tough* v. *Ives,* 162 Conn. 274, 287, 294 A.2d 67 (1972). Although it was the trial court which first called attention to an inconsistency, the plaintiff immediately took the position that the answers were inconsistent. In responding to the defendant's motion for judgment on the original verdict the plaintiff stated her view that the motion should be denied and "that the interrogatories should be resubmitted to the jury for their ultimate resolution of the matter."

The plaintiff does not contend that the error for which review is sought implicates any constitutional right and, therefore, does not invoke the "exceptional circumstances" doctrine permitting review of such claims though first raised on appeal. See *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). Instead she calls upon us to exercise our authority "in the interests of justice [to] notice plain error not brought to the attention of the trial court." Practice Book § 3063. We decline to do so in this case because we are not convinced that there was any manifest injustice amounting to plain error under all the circumstances.

The complaint contained two counts which might reasonably be construed as setting forth only two theories of liability, fraud and undue influence. The answers given by the jury to the first and second

questions clearly resolve the issues related to those causes of action in favor of the defendant. The first count for fraud does contain a paragraph alleging that the decedent was "very old . . . ill, infirm, and was weakened in mind and body and was on medication"; that she had recently been removed by the defendant from a convalescent home and brought to live with him; and that this removal was accomplished by the defendant after he learned that the decedent had recently executed a will dividing her property equally among her children as well as a power of attorney to her daughter, the plaintiff executrix. The plaintiff relies upon the portion of this paragraph concerning the physical and mental condition of the decedent as injecting a separate issue of lack of intent to convey into the case. She also points to the next paragraph which alleges that the defendant had a deed prepared to transfer the property to him; that he caused the decedent to execute it; that she was never informed of what she was signing but was instructed only to sign the paper presented to her; and that no consideration was paid to her for the property. In context these allegations might reasonably be read as relating wholly to the claims of fraud and undue influence expressly made in the complaint. No charge was requested or given with respect to the decedent's dispositive capacity, nor would the plaintiff executrix, who asserts the validity of the will alleged to have been signed about three months before the deed, have been likely to raise this issue as an independent ground to void the conveyance. Similarly, the issue of mistake as a separate ground for rescinding the transfer was not discussed. The court did submit the third interrogatory and did, near the conclusion of the charge, instruct that "the real issue . . . is whether . . .

Mrs. Fazzina intended to give title . . . to her son. . . . A deed delivered with intent to pass title cannot be revoked by the Grantor. . . . And the deed, of course, to be invalid would have to be because of the wrongful conduct, which I've indicated, either by fraud or undue influence." No exception to this limitation of the grounds for setting aside the transfer to those of fraud or undue influence was taken. Undoubtedly the parties also viewed the complaint as alleging only these two bases for recovery, to both of which intention was highly relevant.

The central thrust of the complaint was that the defendant by deceit and imposition had thwarted the true intention of the decedent to have the property equally divided among the children. Undue influence and fraud have the effect of defeating the actual intention or purpose of the grantor by causing him to do what he would not have done if such devices had not been exerted upon him. See *Fritz* v. *Mazurek*, 156 Conn. 555, 560, 244 A.2d 368 (1968). The response of the jury to the first two questions, that the defendant had perpetrated no fraud or undue influence, left no basis under this complaint upon which the plaintiff could have recovered. As the case was tried and pleaded, the trial court might reasonably have thought that the third answer was inconsistent, an assumption also made by the plaintiff. In resubmitting the interrogatories, while the court expressed the view that the third answer was in conflict, it also invited questions by the jury if this impression was incorrect. The ultimate verdict of the jury, changing the answer to the third question from negative to affirmative, indicates that the first answer did not reflect the conclusion which they had reached con-

cerning the intention of the decedent as that issue was framed by the pleadings in the context of the trial. We find, therefore, no injustice which would warrant further review of this claim of error under our authority to consider "plain error." Practice Book § 3063.

The conclusion we have reached makes it unnecessary for us to consider the issues raised by the cross appeal.

There is no error.

In this opinion the other judges concurred.